No. 17,128.

WICKWIRE ET AL. *v.* CITY OF ELKHART ET AL.

PUBLIC IMPROVEMENT.—*Street.—Void Award of Contract.*—The requirement of section 4288, R. S. 1894, that contracts for street improvements, for which the abutting property is ultimately liable, shall be awarded to the best bidder, is violated by the award of a contract containing provisions beneficial to the contractor, not contemplated by the form of bid supplied to bidders, and which are substantially similar to the conditions incorporated in the bid of the bidder to whom the contract is awarded, although such conditions were stricken out before the acceptance of the bid. (See note at end of opinion.)

From the Elkhart Circuit Court.

*D. N. Weaver, Osborne & Zook, A. Anderson* and *L. Hubbard,* for appellants.

*Chamberlain & Turner,* for appellees.

HACKNEY, C. J.—The appellants, who were property owners along the line of Jackson street, in the city of Elkhart, sued the appellees, the city of Elkhart, the members of the common council and the mayor of said city and A. F. Nims, to enjoin the improvement of said street, by said Nims, under a contract awarded by the common council to him for the grading and paving of said street. The circuit court sustained the demurrer of the appellees to the complaint of the appellants, and that ruling is the only assigned error. The improvement undertaken was by virtue of the Barrett law, R. S. 1894, section 4288 *et seq.*, and the proceedings progressed without question to the action of the common council upon the bids for the work. One requirement of the ordinance was that bidders should deposit a certified check for

VOL. 144—20

$100 as security for the compliance with their bids in contracting for the work; a form of bid was prepared by the city and supplied to bidders, and the specifications contained the requirement that "All bids shall be made per square yard, setting out in full kinds of brick and other materials to be used, also the price per running foot of curbing; *and no bid shall be entertained having within it any provisions whatsoever.* But the price per square yard shall include all the necessary work and materials in making the pavement complete. *All work specified to be completed by August 1, 1893.*" The appellee, Nims, one Mayer and others, were competing bidders. The two bidders named were lower in their bids than any other bidders, and the bid of Mayer was $887 less than that of Nims, while the bid of Nims varied from the form provided by the city in containing, in connection with the item of excavating, a charge of one cent per cubic yard for each one hundred feet of hauling beyond one thousand feet; that the work should be completed by December, 1, 1893, instead of August 1, 1893; that he should have the use of the city's street roller without charge, and that the engineer should "make an estimate the first part of each month for all work done the preceding month, and 90 per cent. of same to be paid at once, and the total amount on completion of the contract." The council accepted the bid of Nims, "striking out conditions mentioned in his bid," declared it to be the best bid, and directed the preparation of a contract with Nims. A contract was prepared, reported to and approved by the council, and the mayor was ordered to execute the same on the part of the city. Nims executed the contract and gave bond to the approval of the council, but the mayor declined to execute the contract. The contract so prepared contained the following provisions not

contemplated by the form of bid so provided and not mentioned in any other proceeding of the council: 1. Limiting the hauling of surplus dirt to one-half mile; 2. That the work should be completed on or about December 1, 1893, and if employes should strike the time for completion should be extended; 3. That estimates should be made each thirty days after the work should begin, and 90 per cent. of such estimates should be paid by the city to Nims, within ten days after making each estimate, "as an advancement upon said work," for which Nims should pay the city at the rate of 6 per centum from the dates of payments to a period not to exceed sixty days after the completion of the work, and the city to advance the balance unpaid upon said work within said sixty days.

The statute, R. S. 1894, section 4288, provides for the giving of the contract to "the best bidder, after advertising for three weeks * * * to receive proposals therefor;" it provides, further, section 4290, that the corporation "shall be liable to the contractor for the contract price of said improvement" and the lot owners shall be liable to the city, upon a basis prescribed, and the property shall be liable to a lien for the amount. The liability of the city to the contractor, it is further provided by section 4292, may be discharged, in part, by estimates as the work progresses and payments from the treasury upon such estimates, deducting a reasonable percentage thereof to secure the completion of the contract.

In Elliott on Roads and Streets, p. 371, the correct doctrine, with relation to the special assessment of property for such improvements, is stated with clearness and precision. It is said: "The right to levy local assessments is regarded as an extraordinary one, and it cannot be deduced from the general words of an act incorporating a municipal corporation, unless the

words employed assume to grant, and do clearly grant, that right. The words of a statute assuming to grant the authority to levy local assessments will not be extended by construction for or against the corporation; the construction is strict, and nothing in its favor will be intended except such matters as are clearly implied from the express words of the statute. * * * * The power is purely a derivative one, and it is not only fettered by all the limitations contained in the statute which delegates it, but it has no existence beyond the scope which a strict construction will yield." Again, it is said, p. 371, "Where the statute from which the authority is derived prescribes the mode in which it shall be exercised, that mode must be pursued. There is here a diversity of opinion, some of the cases going so far as to hold that a literal compliance with the statute is essential, while others hold that a substantial compliance is all that is required. In view of the extraordinary character of the authority, and of the fact that it is a delegated one, the only safe course is to apply the general and long established rule regarding the exercise of naked statutory powers and require that the mode of exercising it shall be strictly pursued. * * * It is, however, the duty of the courts to resolve doubts against the validity of the exercise of the authority wherever there is any substantial deviation at all, and to sustain proceedings in cases where there is not an exact compliance with the statute only when it clearly and unmistakably appears that no possible injury has resulted to the land-owner, or could result to him." The authorities in support of these propositions are numerous and will be found cited in the notes to the text.

That the common council had power to improve the street in question and to assess the cost of the

improvement against the property is clearly given by the express provisions of the statute cited. It no less clearly appears from the language, and the necessary implication from these provisions, that the council, in the exercise of this power, should award contracts for the work upon and as the result of fair competitive bidding. No one could say, with the support of reason, that such a contract, awarded without receiving a bid, would be valid. Such a contract would not be awarded pursuant to the mode pointed out by the statute. The purpose and object of the statute is manifest. It was designed to protect the interests of the property owner in securing the best results for the least expenditure and to spare municipal officers the embarrassment, if not the opportunity for corrupt action, of denying contracts to personal and political friends whose proposals are not so favorable to the property owner as that of another. It is as clearly implied from the language and purpose of the statute as if distinctly written in words that the contract must be the result of the competition. In *Platter* v. *Board, etc.,* 103 Ind. 360, it was said: "The provisions of a statute intended to prevent favoritism and insure fair competition upon equal terms to all who choose to compete in bidding, are enforced with a firm hand." Was the contract in question the legitimate result of the competition offered by the council? If the council could strike from the bid the objectionable features therein, a proposition we do not consider, it is difficult to see how the contract could be made upon a basis entirely different from that contemplated by the specifications and the form of bid supplied. It is, it seems to us, perfectly clear that all competitors were entitled to place their bids upon the basis upon which the contract was to be awarded and that to require bids upon one basis and award the

contract upon another was, in practical effect, but to abandon all bids.

If the hauling of surplus dirt was to be limited to one-half mile and that was a material element in considering the price at which the work could be done, that material fact should have been in the possession of all bidders. If the time within which the improvement should be completed was a material consideration in the contract, it was material in the bidding. The council regarded it as material as evidenced by the stipulation that the work should be completed by August 1, 1893. It is manifest that the time for performing the work was a material element to be considered by the bidders as affecting the price at which the work could be accomplished. The advantage of four months additional time was valuable to contractors who might be enabled to carry two or more pieces of work instead of devoting the best part of the season to a single improvement. That advantage might reasonably have affected favorably to the property-owners the bids of all of the competitors.

While the statute permits the council, probably without so stipulating in the contract, to make estimates and payments from time to time as the work progresses, there is no requirement that such payments shall consist of 90 per centum of the estimates, and if payments, so near the value of the work contemplated, each thirty days are to be made, that fact should have been placed in the possession of all of the bidders, to have enabled them to estimate the value of the use of so much of their capital during the progress of the work. The discretion of allowing, after contract, but 50 per centum of 90, would make a difference in the amount of the prepayments to the contractor of nearly $10,000 under this contract. The use of this considerable sum is valuable to the con-

tractor, and enables him to carry on the improvement with less capital than if he should not receive so full an advance payment. If one bidder is kept in ignorance of the amount to be advanced he is at a disadvantage with those who may calculate definitely with reference to the capital required. Nims evidently felt the force of this reasoning when he agreed to allow 6 per centum upon such advance payment. This allowance, however, should not be considered as squaring the possible disadvantage to the property owner in not having had this favor extended to other bidders who might have regarded the use of the advancements worth 10 per centum, and thereby to have reduced their bids in that ratio.

It will not be understood that we hold the contract void because the bidders were not advised in advance of the distance of hauling surplus dirt, the time for the completion of the work and the percentage of estimates to be paid in advance. What we do hold is that to require of the bidders, or some of them, that their proposals shall be made without any knowledge of these elements of the contract, thus requiring them to make their calculations from, to them, the most unfavorable standpoint, and to permit others to bid and secure the contract with such knowledge, violates the purpose of the statute. It destroys the essential features of fair competition, and enables one to bid either with facts before him which are withheld from others, or enables the council to award a contract to some favored bidder upon more favorable terms than others had reason to believe could be procured.

In this instance Nims secured the contract upon terms more favorable and entirely different from those upon which all others formed their bids. When his bid was accepted, striking out the features which departed from the elements upon which all bids were

asked and received, if it did not destroy his bid it was so because he was concurring in the bid made new by the alteration. He thus had the advantage of two bids. But if such features were stricken out to place all bidders upon an exact equality and give no preferences to any, the contract not having been executed upon the bid so reformed was as if made without bids. In brief, the contract in this case was not awarded upon the bid of Nims, nor was it awarded upon the competition held.

It is unnecessary that we should consider the question as to whether Nims, whose bid was higher than that of Mayer, was the "best bidder." Nor do we decide whether the deposit of the certified check by bidders tended to restrict competition.

The circuit court erred in sustaining the demurrer to the complaint, and for that error the judgment is reversed, with instructions to overrule said demurrer.

Note.—As to the right of the lowest bidder on public contract, see note to *Anderson* v. *President and Directors of Public Schools* (Mo.), 26 L. R. A. 707.