## CITY OF BLUFFTON ET AL. v. MILLER.

[No. 5,072. Filed May 12, 1904. Rehearing denied October 13, 1904.]

MUNICIPAL CORPORATIONS.—*Street Improvements.*—*Jurisdiction.*—Where a municipal corporation attempts some method other than that provided by statute for the improvement of streets, or goes beyond the authority given, to that extent it is without jurisdiction, and its acts are void. *pp. 522, 523.*

SAME.—*Street Improvements.*—*Injunction.*—Where a municipal corporation has entered into a contract for making a street improvement, which contract is beyond its jurisdictional power to make, a property owner who is affected by the improvement may enjoin the carrying out of the contract. *pp. 523, 524.*

SAME.—*Street Improvements.*—*Declaratory Resolution.*—*Must State Kind of Improvement.*—A resolution for the improvement of a street providing that the street is to be improved in one of three ways as the council may determine after receiving bids is unauthorized and in violation of §3623a Burns 1901, requiring that the kind of improvement intended to be made shall be specified in the declaratory resolution. *pp. 524-527*

SAME.—*Street Improvements.*—A contract for a street improvement delegating to the city engineer the nature of some of the materials to be used in the execution of the work is invalid. *pp. 527-532.*

From Wells Circuit Court; *James P. Hale*, Special Judge.

Suit by Charles M. Miller against the city of Bluffton and another to enjoin the carrying out of a contract for a street improvement. From a judgment in favor of plaintiff on demurrer to complaint, defendants appeal. *Affirmed.*

*C. E. Sturgis, J. H. C. Smith, B. K. Elliott, W. F. Elliott* and *F. L. Littleton,* for appellants.

*J. S. Dailey, Abram Simmons, F. C. Dailey, W. H. Eichhorn, J. R. Wilson* and *M. M. Townley,* for appellee.

ROBINSON, J.—Suit by appellee, an abutting property owner, against appellant city and a contractor, to enjoin the carrying out of a contract for a street improvement. Demurrers to each of the two paragraphs of complaint were overruled, and, appellants refusing to plead further, the court rendered judgment against them for costs and decreed a perpetual injunction.

It is first argued that this is a collateral attack, and can not be sustained unless the proceedings are void for want of jurisdiction, and that, as a remedy by remonstrance and also by appeal is given, injunction will not lie.

The authority to assess abutting property for a street improvement is purely statutory, and such statutes are to be strictly construed. The manner in which the statute provides the assessment shall be made is the measure of the city's power to make it. Whether this power has been exercised as the statute directs, presents a question in its nature jurisdictional. If the municipality attempts some method other than that provided by the statute, or goes beyond the authority given, to that extent it is without jurisdiction and its acts are void. In such cases it is undertaking the exercise of an unauthorized power which equity will enjoin. If mandatory provisions of the statute or charter have been disregarded in an ordinance, and a contract beyond the scope of municipal power entered into, the ordinance and contract are illegal, and an assessment made upon property through such proceedings would be illegal. It can not be said that the remedy at law in such cases is as adequate or efficient as the remedy by injunction. It has been held, time and time again, that statutes granting a municipality power to impose a burden upon private property, and requiring the doing of some particular thing, in its nature jurisdictional, as a condition precedent to the right to impose such burden, the failure to do the thing required renders the proceeding void. If the act of the

City of Bluffton *v.* Miller.

municipality is void because of a want of power to do the thing attempted, it is void because of a want of jurisdiction. See *Sackett* v. *City of New Albany,* 88 Ind. 473, 45 Am. Rep. 467; *Barber Asphalt Pav. Co.* v. *Edgerton,* 125 Ind. 455, 461; *Board, etc.,* v. *Gillies,* 138 Ind. 667; *Wickwire* v. *City of Elkhart,* 144 Ind. 305; *Case* v. *Johnson,* 91 Ind. 477; *Lowe* v. *Lawrenceburg Roller Mills Co.,* 161 Ind. 495; *Spring Steel Fence & Wire Co.* v. *City of Anderson,* 32 Ind. App. 138; *Cleveland, etc., R. Co.* v. *Edward C. Jones Co.,* 20 Ind. App. 87; *Adams* v. *City of Shelbyville,* 154 Ind. 467, 49 L. R. A. 797, 77 Am. St. 484; *City of Ft. Wayne* v. *Shoaff,* 106 Ind. 66; *Goring* v. *McTaggart,* 92 Ind. 200; *City of Delphi* v. *Startzman,* 104 Ind. 343; Dillon, Mun. Corp. (4th ed.), §§908, 914; Smith, Mun. Corp., §1242.

In *Watson* v. *Sutherland,* 5 Wall. 74, 18 L. Ed. 580, the rule is stated: "It is not enough that there is a remedy at law; it must be plain and adequate, or in other words, as practical and efficient to the ends of justice, and its prompt administration, as the remedy in equity." This principle has been approved in this State in a number of cases. See *Hart* v. *Hildebrandt,* 30 Ind. App. 415, and cases cited; *Meyer* v. *Town of Boonville,* 162 Ind. 165; Dillon, Mun. Corp. (4th ed.), §914.

It is no longer necessary in this State that a plaintiff should show by averment and proof that he will suffer irreparable injury. In Pomeroy, Eq. Jurisp. (2d ed.), §1357, the author says: "Judges have been brought to see and to acknowledge—contrary to the opinion held by Chancelor Kent—that the common law theory of not interfering with persons until they shall have actually committed a wrong is fundamentally erroneous, and that a remedy which prevents a threatened wrong is in its essential nature better than a remedy which permits the wrong to be done, and then attempts to pay for it by the pecuniary damages

which a jury may assess." See *Xenia Real Estate Co.* v. *Macy,* 147 Ind. 568; *Champ* v. *Kendrick,* 130 Ind. 549; *Bishop* v. *Moorman,* 98 Ind. 1, 49 Am. Rep. 731.

The proceedings of the council leading up to and including the contract are questioned first upon the ground that the declaratory resolution and notice for bids failed to specify the kind of improvement and invite competitive bidding thereon. In the original resolution, and in the notice inviting bids, the street was to be improved by paving the roadway between the curbs with either sheet asphalt pavement upon a concrete foundation, or brick paving blocks upon a concrete foundation, or with bituminous macadam, as the council should determine after receiving the bids. The statute provides that the common council, desiring to make a street improvement, "shall order the same by the adoption of a resolution declaring such improvement to be necessary and stating the kind, size, location and terminal points thereof and fixing a date upon which bids will be received for the construction of said improvement." It is further provided that the council shall open the bids upon the date fixed and award the contract, that it may take the bids under advisement, and may reject any and all bids, and that any property owner whose lands shall be assessed for the improvement may remonstrate "against said improvement at any time before the letting of the contract," and if the remonstrance "is signed by two-thirds of the property owners, residing upon the lots abutting on such improvement, and representing two-thirds of the number of lineal feet of such improvement, then all further proceedings shall be abandoned." Acts 1901, p. 534, §3623a Burns 1901.

This statute manifestly was intended to and does curtail the power formerly given to city councils in making street improvements on their own motion. For the first time abutting property owners who are to pay for the improvement are given the right to defeat the kind of improvement

the council proposes to make. This gives to the declaratory resolution and notice an importance which it did not before possess. The statute does not require that the abutting owners shall state any reasons for objecting to the kind of improvement proposed, but, if the number mentioned object to the particular kind before the contract is let, the matter is at an end. The property owners have the right to know at the outset the kind of improvement selected. If they remonstrate they must do it before the contract is let. The declaratory resolution states that the street is to be improved in one of three ways as the council shall determine after receiving bids. The acceptance of some particular bid and the letting of the contract may be practically one and the same act. If effect is to be given the language used in the section, it can not be said that the "kind of improvement" means that the improvement should be described as the paving of the roadway, the construction of a sidewalk, and the like. The statute means that the council shall state in the declaratory resolution, not only that the improvement is necessary, but shall state the nature and character of the improvement. The council is to secure definite bids for a particular kind of work. It is a matter of common knowledge that there are various kinds of street improvements, and the statute does not say that the council shall state a number of kinds of improvements, one of which, after bids are received, may be selected, but it directs that the declaratory resolution shall state the kind of improvement, and shall fix a date upon which bids will be received for the construction of that improvement. After the kind of improvement has been selected and property owners given an opportunity to be heard, bids are to be asked and the contract let. The power possessed by the council is whatever the statute gives it. The mode prescribed excludes all others. Any method adopted other than that named in the statute is void, because there is no power to adopt it. A method

actually adopted might bring as good or better results than the one provided; but that is not the question. The only question is, what method has the legislature prescribed, and has the council followed that method? It is purely a question of power. The legislature has delegated to the council the power to charge the property of individuals with the expense of the improvement, and the steps to be taken are not merely directory, but are mandatory, and are to be strictly pursued. The property owner may insist upon the observance of every statutory requirement which will in the least tend to his protection. An order for a street improvement "is, in some respects," said the court in *Merrill* v. *Abbott*, 62 Ind. 549, "analogous to a judicial act, and ought clearly and explicitly to prescribe what it authorizes to be done as regards the contemplated improvement to which it is intended to apply."

If the council may designate more than one kind of improvement, it may designate all kinds. We do not think it can be said that the competitive bidding contemplated by the statute would necessarily be secured where bids are invited on various kinds of improvements. In such a case the bidders would not be put on terms of perfect equality, because they would not be bidding on the same proposition on the same terms. It is true, the contract is to be let to the best bidder, not necessarily the lowest, but the bid accepted is to be the best bid, not merely for the improvement of the street but the best bid for improving the street in the manner already designated, by the council. Such a plan could result in injury to the property holder.

In *Wickwire* v. *City of Elkhart*, 144 Ind. 305, the court approved the following: "It is, however, the duty of the courts to resolve doubts against the validity of the exercise of the authority wherever there is any substantial deviation at all, and to sustain proceedings in cases where there is not an exact compliance with the statute

only when it clearly and unmistakably appears that no possible injury has resulted to the landowner, or could result to him." See *Helms* v. *Bell,* 155 Ind. 502; *Coggeshall* v. *City of Des Moines,* 78 Iowa 235, 41 N. W. 617; *Fones Hardware Co.* v. *Erb,* 54 Ark. 645, 17 S. W. 7, 13 L. R. A. 353; *Wrought Iron Bridge Co.* v. *Board, etc.,* 19 Ind. App. 672; *Mazet* v. *City of Pittsburg,* 137 Pa. St. 548, 20 Atl. 693; *Fairbanks, etc., Co.* v. *City of North Bend* (Neb.), 94 N. W. 537; *Ricketson* v. *City of Milwaukee,* 105 Wis. 591, 81 N. W. 864, 47 L. R. A. 685; *Kneeland* v. *City of Milwaukee,* 18 Wis. 413; *Wells* v. *Burnham,* 20 Wis. 112; *Kneeland* v. *Furlong,* 20 Wis. 437.

In *City of Connersville* v. *Merrill,* 14 Ind. App. 303, cited by counsel for appellant, the general character of the walk was to be of stone, and bids were invited on three different kinds of stone. One set of specifications would no doubt have been sufficient. The only question raised was as to the uncertainty with reference to the bidding, and it was there held that the property holder "had the benefit of competition on each brand or special kind of the general material to be used." This language, we think, distinguishes that case from the case at bar, where there was no general material specified, but the materials in the kinds of improvement designated were entirely different. Moreover, the act of 1901, *supra,* gives the landholder a right with reference to the kind of improvement which he did not have under the act in force in the above case, and the statute should be construed to make this new right effective.

The proceedings of the council are questioned also on the ground that certain powers and duties were unlawfully delegated to the city civil engineer. In the specifications for a bituminous macadam street, which specifications are made a part of the contract entered into for the improvement, it is provided, among other things, that on top of a certain foundation "shall be sprinkled a thin layer of Warren's No. 1 semi-liquid composition, same to be fluid

enough to unite with the cold stone, or some other preparation of coal tar, free from petroleum or other foreign substance, and of equal and uniform density and quality, same to be determined by the city engineer. Over this shall be spread, by pouring, a heavy coating of Warren's No. 24 'Puritan Brand' hard macadam bituminous cement or other preparation of coal tar, free from petroleum or other foreign substances, and of equal uniform density and quality, same to be determined by the city engineer." Upon the above foundation is to be a wearing surface, "which shall be two inches thick and composed of carefully selected and very hard limestone, or other hard stone, acceptable to the city engineer, and gravel ranging in size from one inch in diameter to an impalpable powder mixed with sand, and containing all sizes and grades, * * * the stone and sand shall be heated * * * not higher than 300 degrees Fahrenheit, it shall then be thoroughly mixed by machinery with Warren's Puritan Brand No. 19 bituminous macadam composition or some other preparation of coal tar, free from petroleum or other foreign substances, and of equal and uniform density and quality, same to be determined by the city engineer, * * * the amount of said composition to be used shall be nine per cent. to eighteen per cent. by weight; the exact proportion of materials will depend upon the character of the materials, the location, grade, and traffic of the street. * * * After the rolling of the wearing surface there should be spread a thin coating of Warren's quick drying bituminous flush coat composition or some other preparation of coal tar, free from petroleum or other foreign substance, and of equal and uniform density and quality, same to be determined by the city engineer * * *. Before the final rolling shall take place, a slight coating of coarse sand or finely crushed screenings shall be sprinkled on the pavement, the screenings may be increased in size if ordered by the engineer. * * * On side hills, where ordered by the engineer, there

may be rolled into the surface a thin layer of stone chips."
Bidders proposing to use other brands of material than
those mentioned in the specifications should file samples
with the engineer at least three days before the letting, "or
such bids will not be read or considered, nor will they be
considered unless the same are approved by the engineer
and common council."

The statute gives to the engineer no authority whatever
to determine the character of the improvement, or to de-
termine the materials to be used.  He prepares plans and
specifications for public improvements when directed to
do so by the council (§3508 Burns 1901), but these plans
and specifications become a part of the contract which the
city makes for the improvement, and are with reference to
the kind of improvement and materials to be used as deter-
mined by the council.  It is not a delegation of power to
leave to the engineer the execution of a work which the
council has ordered to be done in a particular way.  But
the power to determine that an improvement shall be made,
or the manner in which it shall be made, is a public power
conferred by the legislature on the legislative department
of the municipal government, and can not be delegated to
any officer or any other department, but must be exercised
in strict conformity with the statute conferring the power.
The legislature evidently intended to place the responsi-
bility of determining the plan of the improvement upon the
common council.  As the expenses of the improvement are
to be paid by the property owners, the power to make the
improvement is a power of taxation, and a court is not
authorized to say that such sovereign authority may be
exercised by any officer or officers except those whom the
statute in terms designates.  The council was without au-
thority to delegate to the engineer the power to select any
of the materials to be used in making the improvement,
but it attempted to do this when it delegated to him the
power to order used at his discretion these various Warren's

compounds or other compounds of equal density or quality. It is the duty of the council to determine the nature of the improvement to be made.

Nor is there any authority for giving the engineer a voice in the letting of the contract. The statute plainly directs that when the bids are received the council shall let the contract to the best bidder. Selecting the kind of material to be used can not be said to be a matter of detail which may be left to the engineer, nor can it be said that selecting the material is a ministerial duty. In *Smith* v. *Duncan,* 77 Ind. 92, an ordinance provided that a pavement should be of wooden blocks, "but," said the court, "of what wood the blocks shall be, how they shall be laid, to what grade, and every minutia of the work, is left to be determined by the engineer. The law does not contemplate the delegation of such powers to that officer." See *Thompson* v. *Schermerhorn,* 6 N. Y. 92, 55 Am. Dec. 385; *California Improv. Co.* v. *Reynolds,* 123 Cal. 88, 55 Pac. 802; *Hydes* v. *Joyes,* 4 Bush (Ky.) 464, 96 Am. Dec. 311; *McCrowell* v. *City of Bristol,* 89 Va. 652, 16 S. E. 867, 20 L. R. A. 653; *Bolton* v. *Gilleran,* 105 Cal. 244, 38 Pac. 881, 45 Am. St. 33; *City of St. Louis* v. *Clemens,* 43 Mo. 395; *Birdsall* v. *Clark,* 73 N. Y. 73, 29 Am. Rep. 105; *City of Indianapolis* v. *Lawyer,* 38 Ind. 348; Dillon, Mun. Corp. (4th ed.), §§96, 779; Smith, Mun. Corp., §564.

In *Hitchcock* v. *Galveston,* 96 U. S. 341, 24 L. Ed. 659, the council directed the pavements to be constructed of one or the other of several materials, and gave abutting lot owners the privilege of selecting the kind, and reserving to the chairman of their committee authority to select in case the lot owners failed. The council having provided for the work and for the bidding, the execution of a contract on behalf of the city for doing the work was a ministerial act which the council might direct should be performed by the mayor and chairman of the committee on streets and

City of Bluffton v. Miller.

alleys. It is there stated that a municipality may do its ministerial work by agents, and that there was no unlawful delegation of power, "but," said the court, "if there had been, the contract was ratified by the council after it was made."

Counsel cite also the case of *Mayor, etc.,* v. *Stewart,* 92 Md. 535, 48 Atl. 165, where the council had selected asphalt as the material with which the street was to be paved, and permitted the engineer to use vitrified brick in lieu of asphalt in the gutters, and upon such other portions of the street as in his judgment might be necessary or advisable; but the council had designated both materials by ordinance, and the only discretion given the engineer was to use one in preference to the other at particular places. In that case it is held that "the power to determine what material should be used in paving a street is a legislative power, and can not be transferred by the city council to anyone else." In the case at bar we do not think it can be said that the discretion given the engineer was, "with respect to the details of doing the work, 'necessary discretion in a workman employed to do a work,' " as stated in the above case.

In *Ray* v. *City of Jeffersonville,* 90 Ind. 567, the statute expressly imposed upon the engineer the duty of making the assessments in certain cases, and the case is to be distinguished from the case of *Smith* v. *Duncan,* 77 Ind. 92. In *Taber* v. *Grafmiller,* 109 Ind. 206, the council ordered that certain sidewalks "be graded to a width of ten feet, and paved with brick to a width of six feet," and that said improvement shall be made under the supervision and to the satisfaction of the city civil engineer, and in accordance with plans and specifications" on file in the engineer's office, and that the engineer should set the proper stakes. It was held there was no delegation of authority, that there was a "specification of the nature of the work," that the resolution clearly implied that there was an exist-

ing grade previously established, that the specification that the pavement should be of brick was sufficiently certain as "the just and reasonable implication is that the brick shall be paving brick of the kind ordinarily used." We do not understand that this case overrules *Smith* v. *Duncan, supra,* or that there is any conflict in the views announced in the two cases.

In *Swift* v. *City of St. Louis* (Mo.), 79 S. W. 172, the board of public improvements gave notice that on a certain day it would consider the improvement of a street with either one of four kinds of material specified, and afterwards recommended to the municipal assembly an ordinance for the improvement with bituminous macadam. A contract was made under the ordinance. The specifications of material to be used were certain compositions known as Warren's Puritan Brands, but no power was given the engineer in that case to use any other composition which he might think equally as good.

We think the proceedings of the council were invalid because of the failure of the resolution and notice to specify the kind of improvement contemplated, and because certain powers were unlawfully delegated to the civil engineer.

Judgment affirmed.