## PREVO ET AL. *v*. CITY OF HAMMOND ET AL.

[No. 23,011. Filed June 20, 1917. Rehearing denied November 20, 1917.]

1. INJUNCTION.—*Acts of Municipal Corporations.—Collateral Attack.*—The acts of municipal bodies performed within the scope of their powers and free from fraud are not open to collateral attack. p. 616.

2. MUNICIPAL CORPORATIONS.—*Collateral Attack on Acts.—Execution of Statutory Powers.—Jurisdictional Question.*—Whether a power of a municipal corporation has been executed in the manner directed by statute presents a question in its nature jurisdictional as regards a collateral attack on its acts. p. 617.

3. APPEAL.—*Review.—Findings of Fact.—Conclusiveness.*—In an action to restrain the execution of a contract as being fraudulent, the court on appeal will not disturb the court's finding on the issue of fraud where there was some evidence to sustain it. p. 617.

4. MUNICIPAL CORPORATIONS.—*Public Improvements.—Power to Make Special Assessments.*—The power of municipal corporations to assess the costs of improvements against the real estate benefited does not exist in the absence of a statutory grant, and the extent of the power is limited to that which the statute expressly confers. p. 617.

5. MUNICIPAL CORPORATIONS.—*Public Improvements.—Assessments.—Statutes.—Construction.*—Statutes on the subject of a city's power to assess property benefited for improvements are strictly construed in favor of the property owner, and any doubt as to the existence of the power is resolved against the city. p. 618.

6. MUNICIPAL CORPORATIONS.—*Powers.—Public Improvements.—Sewers.*—Under §8961b Burns 1914, Acts 1909 p. 187, any city has power through the action of its common council to build a pumping station in connection with a general system of sewerage adapted to drain the entire city, and to provide for the payment of the cost of such general sewer system and pumping station by the issue of bonds of the municipality payable from the general tax levies, provided such city is sufficiently level so that the entire municipality may use the system. p. 618.

7. MUNICIPAL CORPORATIONS.—*Public Improvements.—Sewers.—Statute.*—Section 8722 Burns 1914, Acts 1905 p. 219, 302, provides for the building of a local sewer for the benefit of abutting property only, and for the construction of a large sewer intended and adapted to receive sewage from connecting or col-

Prevo *v.* City of Hammond—186 Ind. 612.

lateral sewers already in existence or which may be constructed, but it is only when the proceeding contemplates the construction of a sewer adapted to receive sewage from connecting collateral sewers that the statute provides for the formation of a drainage district including the territory which will find an outlet through such sewer, the cost of which is assessable upon all lots and parcels of land within the district and which would find an outlet through the main sewer by means of connecting drains. p. 619.

8. MUNICIPAL CORPORATIONS.—*Public Improvements.—Sewers.— Division of Cost.—Statute.*—Under §8724 Burns 1914, Acts 1905 p. 219, 305, relating to the division of the cost of the construction of sewers adapted to receive drainage from connecting sewers, the cost of so much of such sewer as would be necessary to provide an adequate local sewer for the property abutting thereon shall be assessed against such abutting property and the remainder of the cost shall be primarily assessed against all the lots and parcels of land included in the drainage district.   p. 620.

9. MUNICIPAL CORPORATIONS.—*Public Improvements.—Sewers.— Property Assessable. — Statutes. —* Under §§8722, 8724 Burns 1914, Acts 1905 pp. 219, 302, 305, relative to the construction of sewers and the payment of the cost thereof, no lot or parcel of land can be assessed to pay the cost of a main sewer adapted to receive drainage from connecting collateral sewers unless such lot is benefited directly as abutting property, or indirectly by reason of the fact that such sewer is calculated to afford it an outlet by means of a collateral sewer already in existence or to be thereafter constructed.   p. 620.

10. MUNICIPAL CORPORATIONS.—*Public Improvements.—Construction of Main Sewers.—Separate Proceedings.—Assessments.— Statutes.*—Where a proposed drainage project under §§8722, 8724 Burns 1914, Acts 1905 pp. 219, 302, 305, contemplated the construction of a sewage pumping station and two main sewers, each with connecting collaterals, and each of such sewers drained separate and distinct areas and either could not be utilized as an outlet for any portion of the district drained by the other, such sewers cannot be constructed in a single proceeding and the costs thereof assessed against the real estate within a district so formed as to include the area drained by both, but separate drainage districts must be formed embracing the territory drained by each of such sewers, so that assessments can be made and apportioned as to the lands benefited, as the statute contemplates the levying of assessments for a sewer only against real estate benefited directly as abutting property or indirectly by finding an outlet through such sewer.   pp. 620, 623, 626.

11. MUNICIPAL CORPORATIONS.—*Public Improvements.*—*Construction of Sewers.*—*Assessments.*—*Statutes.*—Under §8722 Burns 1914, Acts 1905 p. 219, 302, relating to the construction of sewers, no proceeding is authorized which would result in the fixing of the assessments in a way other or different from that provided in the act, or which would result in assessing any real estate for any part of the costs of construction of a sewer which would not either directly or indirectly afford an outlet for its sewage. p. 622.

12. MUNICIPAL CORPORATIONS.—*Public Improvements.*—*Drainage Districts.*—*Territory Included.*—Under §8722 Burns 1914, Acts 1905 p. 219, 302, a drainage district to be formed in the construction of any sewer should include all territory which will ultimately find an outlet through it, and no other. p. 622.

13. MUNICIPAL CORPORATIONS.—*Public Improvements.*—*Sewage Disposal Plant.*—*Construction and Assessments.*—*Statutes.*— Under §8696 Burns 1914, Acts 1905 p. 219, 278, authorizing cities to erect, maintain and operate works for the collection, treatment and disposal of sewage, but prescribing no method of exercising the power, and under §8965 Burns 1914, Acts 1905 p. 219, 409, providing that where a power is granted by any section of the cities and towns act to any officer or board and no method is provided for the exercise thereof, and provision is made by any other section of the act or by any law for the exercise of such or a similar power which is applicable to the exercise of the authority so granted, then such other section or law, in so far as it provides a method for the exercise of the power, may be followed as fully as if incorporated in and made a part of the section granting such authority, a pumping station and sewage disposal plant may be constructed and assessed against the real estate benefited thereby to be included within a district to be formed for that purpose in accordance with §8722 Burns 1914, Acts 1905 p. 219, 302, since the power to construct sewers and build sewage pumping stations are similar powers, both granted by clause 7 of §8696 Burns 1914, and, a method having been provided for the exercise of the authority to build sewers, that method may be followed in the erection of a pumping station. p. 624.

14. MUNICIPAL CORPORATIONS.—*Public Improvements.*—*Construction of Main Sewer and Collaterals.*—*Proceedings.*—Under §§8722, 8724 Burns 1914, Acts 1905 pp. 219, 302, 305, a city may construct a main sewer and one or more connecting lateral sewers as one work and under a single proceeding if the connecting laterals are purely local sewers, the costs of which must be assessed entirely against abutting property, but where the connecting sewer is one intended to receive sewage from

other connecting sewers, a separate proceeding would be required necessitating the formation of a subordinate sewage district including the territory to which such connecting sewer affords an outlet, so that the assessments can be made and apportioned as required by the statute. p. 625.

From Lake Circuit Court; H. J. Paulus, Special Judge.

Action by James E. Prevo and others against the City of Hammond and others. From a judgment for defendants, the plaintiffs appeal. Reversed.

William J. Whinery, for appellants.
J. A. Gavit and Jesse E. Wilson, for appellees.

LAIRY, J.—Appellants brought this suit in the Lake Circuit Court seeking to enjoin the city of Hammond, certain of the officers of said city, and the contractors from carrying out a contract entered into between the city, through its board of public works, and the contractors for the construction of a pumping station and a system of sewers to connect therewith. The record discloses that the improvement contemplated included a pumping station located on the north bank of the Grand Calumet river, a main sewer to connect therewith and extend in a northerly direction together with certain connecting collateral sewers, and also a main sewer to extend south from the pumping station and to be connected therewith by means of a siphon constructed under the river together with certain collateral sewers to connect with the main sewer extending south. It appears that the entire work was treated by the city as a single public improvement. The board of public works fixed the boundary limits of the deep sewer system and filed a map showing the territory to be benefited thereby and took such further steps as resulted in the establishment of a drainage district including about half of the area of the city of Hammond, a part of which district is located on the north side of the

Grand Calumet river, and a part of which is located on the south side of that river. The pumping station was designed and intended to furnish power to operate pumps and also to provide means for treating and disposing of the sewage in a sanitary manner. The specifications provided that the pumping station and machinery and each and all of the sewers should be bid on and let as one contract and the contract was so let.

It is the theory of appellants that the benefits which will result from the construction of the sewers provided for are not common to all real estate situated within the district for the reason that the sewers to be constructed on opposite sides of the river would have no connection except that the pumping station is intended to pump the sewage from both. It is asserted that the board of public works has no power to join several sewers and a pumping station in one proceeding and to make assessments for the cost thereof on a common district as proposed in the proceeding which is attacked.

A trial resulted in a finding and judgment denying the injunction. Appellants filed a motion for a new trial based upon the insufficiency of the evidence to sustain the decision of the court and upon the ground that such decision was contrary to law. The court overruled this motion, which ruling is assigned here as the only error relied on.

It is well settled that the acts of municipal bodies performed within the scope of their powers and free from fraud are not open to collateral attack. *Mc-*

1.   *Eneney* v. *Town of Sullivan* (1890), 125 Ind. 407, 25 N. E. 540. In that case the court said: "The attack made upon the proceedings of the corporate officers is a collateral one, and it is well settled that upon such an attack only defects or irregularities affecting the jurisdiction can be made available."

Appellants attack this proceeding on the ground of fraud and also upon the ground that the city, in an attempt to exercise a power granted, did not proceed in the manner prescribed by the statute. Whether a power has been executed in the manner directed by the statute presents a question in its nature jurisdictional. "If the municipality attempts some method other than that provided by the statute, or goes beyond the authority given, to that extent, it is without jurisdiction and its acts are void." *City of Bluffton* v. *Miller* (1904), 33 Ind. App. 521, 70 N. E. 989.

The issue of fraud presented by the allegations to the effect that the city of Hammond through its board of public works was providing an electric light and power plant for the city under the guise of erecting a pumping station was denied, thus presenting a question of fact. Upon this issue the finding of the trial court was against appellant and, as there is evidence to support such a finding, it cannot be disturbed on appeal.

The question of fraud being thus disposed of, we are now to consider the power of the city through its board of public works to order the proposed improvement and to assess the cost thereof against the real estate benefited as proposed in this proceeding. In determining what powers the legislature had granted to cities in this regard we are required to look to the statutes on the subject. The power to assess the costs of improvements against the real estate benefited does not exist in the absence of a statute granting such power, and when granted, the extent of the power is limited to that which the statute expressly confers. *Klein* v. *Nugent Gravel Co.* (1903), 162 Ind. 509, 70 N. E. 801; *Indiana Union Traction Co.* v. *Gough* (1913), 54 Ind. App. 438, 102 N. E. 453; *Darby* v. *Vinnedge*

(1913), 53 Ind. App. 525, 100 N. E. 862.    Statutes on
this subject are strictly construed in favor of the
5.    property owner, and in case of doubt as to the
existence of the power, the doubt is resolved
against the municipality.    *Adams* v. *City of Shelbyville*
(1899), 154 Ind. 467, 57 N. E. 114, 49 L. R. A. 797, 77
Am. St. 484.

The first matter for consideration is the power of the
city to construct a pumping station in connection with
several main and collateral sewers in one pro-
6.    ceeding providing for one entire assessment dis-
trict.    Appellants concede that any city has
power through the action of its common council to build
a pumping station in connection with a general sys-
tem of sewerage adapted to drain the entire city, and
to provide for the payment of the cost of such general
sewer system and pumping station by the issue of bonds
of the municipality to be met by a fund to be provided
by general tax levies as provided by §8961b Burns 1914,
Acts 1909 p. 187.    This section provides that no such
improvement shall be made unless authorized by a ma-
jority vote of the qualified voters of the municipality
to be taken in accordance with the terms of the statute.
This section by its express provisions applies only to
such cities and towns as are sufficiently level that
the entire municipality may use such general system.
Appellees do not claim that the proceedings for the con-
struction of the improvement here under consideration
rest upon this statute, and the section is mentioned only
because of appellants' claim that an improvement such
as this can be constructed, if at all, only in accordance
with its provisions and at the cost of the entire munici-
pality; and that there is no statutory authority for as-
sessing the cost of such an improvement, as a whole,
against the property benefited.    Appellants do not deny
that cities have power to order the construction of

sewers and assess the cost of the same against the property benefited in accordance with the provisions of our statutes on the subject. §8722 *et seq.* Burns 1914, Acts 1905 p. 219, 302. They do assert, however, that these statutes require a separate proceeding for each sewer constructed, and that they do not authorize the building of a system of sewers, consisting of several sewers located on separate streets and connected with a pumping station and disposal plant, in a single proceeding, as here proposed.

The legislature in 1905 made provision for the building of two classes of sewers—one a local sewer for the benefit of abutting property only, the other a

7. larger sewer intended and adapted to receive sewage from connecting or collateral sewers already in existence or which may be constructed in the future. §8722 Burns 1914, *supra.* When the proceeding contemplates a local sewer only, no drainage district is required to be formed as the improvement is intended to benefit the abutting property only; but when the proceeding contemplates the construction of a sewer adapted to receive sewage from connecting collateral sewers the statute provides for the formation of a drainage district including the territory which will find an outlet through such sewer by means of the connecting drains already in existence and those to be subsequently constructed. The legislature evidently contemplated that all of the lots and parcels of land included within the district to be so formed would be benefited by the construction of the sewer provided for in the proceeding for the reason that it provided an outlet through connecting collateral sewers already in existence, or that it would provide such an outlet when other such sewers were constructed. It was deemed proper by the legislature that a part of the cost of the construction of the main sewer should be imposed upon

all lots and parcels of land situated within the district and which would find an outlet through it by means of connecting sewers. The section of the statute with reference to making the primary assessments to 8. pay the cost of constructing a sewer which is adapted to receive drainage from connecting sewers provides that the cost of such sewer shall be divided and that so much of the cost as would have been necessary to provide an adequate local sewer for the property abutting thereon shall be assessed against such abutting property, and that the remainder of such cost shall be primarily assessed against all of the lots and parcels of land included in the drainage district. §8724 Burns 1914, *supra.* From a consideration 9. of these statutes it seems clear that the legislature did not intend that any lot or parcel of land should be assessed to pay the cost of any main sewer adapted to receive drainage from connecting collateral sewers unless such lot or parcel of land was benefited directly as abutting property, or indirectly by reason of the fact that such sewer was calculated to afford it an outlet by means of a collateral sewer then in existence or to be thereafter constructed. As before stated, the improvement contemplated by this proceeding 10. consists of a pumping station on the north bank of the Grand Calumet river, together with a sewer connecting therewith and running north therefrom and also a sewer connected therewith by a siphon under the river and extending in a southerly direction therefrom. The sewer planned to extend north from the pumping station is adapted to receive sewage from collateral sewers and is calculated to afford an outlet for that portion of the sewerage district established in this proceeding which lies north of the Grand Calumet river but it could never possibly be utilized as an outlet for any of the portion of such district which lies

south of that river.   The main sewer which is planned to extend south from the pumping station is adapted to afford an outlet by connecting sewers to that portion of the sewerage district lying south of the river but it could never be used as an outlet for any portion of the district lying north of the river.   As applied to the situation presented by this record, the statute clearly requires that the cost of the improvement to be constructed south of the river should be assessed against a sewerage district lying south of the river and including the territory which will find an outlet from that direction and that no part of the cost of such improvement should be assessed against any lots or parcels of land lying north of the river for the reason that no benefits could accrue to the lands north of the river from the construction of sewers which would not either directly or indirectly afford them outlet.   For the same reason the statute requires that a separate drainage district be formed north of the river including the territory which will find an outlet through the main sewer to connect with the pumping station from the north. Unless the main sewer extending north from the pumping station and the main sewer extending south therefrom are constructed under separate proceedings necessitating a separate drainage district for each, it is apparent that the assessments cannot be made and apportioned as to the lands benefited in the manner contemplated by the statute.   If both of these sewers were to be constructed in one proceeding and the drainage district formed were to include all of the territory drained by both, it is apparent that an attempt to make the assessments in conformity with the statutes would result in assessing a part of the cost of the improvement lying south of the river on all of the real estate located within the drainage district including that on the north of the river as well as that on the south, and *vice versa.*

A consideration of the statute as a whole shows that the legislature did not intend that any real estate should be assessed to pay any part of the cost of a sewer to be constructed under the act unless such real estate would be benefited directly as abutting property or indirectly by finding an outlet through such sewer.

Proceedings for the construction of sewers must be of such a character as to enable the board of public works to make the assessments and to apportion them in accordance with the statute. No proceeding is authorized which would result in the fixing of the assessments in a way other or different from that provided in the act, or which would result in assessing any real estate for any part of the costs of the construction of a sewer which would not either directly or indirectly afford an outlet for its sewage. A drainage district to be formed in the construction of any sewer should include all territory which will ultimately find an outlet through it, and no other; and the fact that in this case the portion of the drainage district which drains from the north is separated from that portion which drains from the south by a river, is not decisive of the question.

Appellants assert that any construction of the statute that would authorize assessments to be made against real estate to pay a part of the cost of constructing a sewer that would not either directly or indirectly afford it an outlet for drainage would amount to the taking of property without due process of law. In view of the construction placed upon the statute by this opinion the court is not required to decide the constitutional question thus presented. The constitutional question is referred to as showing jurisdiction in this court.

The court accordingly holds that two main sewers on opposite sides of a river draining separate and distinct

territory cannot be constructed under our statute in a single proceeding and the costs thereof assessed against the real estate within a district so formed as to include the territory drained by both, a part of which lies on each side of the river.

Appellees cite *Lewis.* v. *Albertson* (1899), 23 Ind. App. 147, 53 N. E. 1071, and rely upon it as authority for the proposition that two or more separate public improvements may be constructed under one proceeding. In that case it appears that the common council by resolution declared the necessity of improving H street, and in the same resolution declared the necessity of improving I street. Later by one resolution the common council ordered the improvement of H street from Fifteenth street south to the city limits and of I street from Sixteenth street to the city limits. In an action to enforce an assessment the court held that such assessment was not void for the reason that two separate streets were improved in a single proceeding. It will be observed that the cost of street improvements under the statute in force were assessed against the property abutting on the streets improved and no other. Assessments in such proceedings do not require the formation of assessment districts such as the statutes governing a proceeding of the kind here involved require; and therefore the fact that a single proceeding included the improvement of two separate streets would not in any way interfere with the assessment of the benefits in the manner provided by the statute as it would do in the proceeding here under consideration. The attention of the court is also called to a number of decisions by courts of other states; but, as it is not shown that the statutes under which those decisions were made were in any respect similar to those which govern the decision of this case, they cannot be regarded as controlling.

The court does not hold that there is a lack of power

to construct the work contemplated by this proceeding and to assess the cost against the property benefited. The holding is that the proceedings do not conform to the requirements of the statute. Because there is an attempt to exercise a power in a manner essentially different from that provided by the statute, the attempted proceeding must fail. There can certainly be no doubt that the city has power under statutes to construct the contemplated improvement in all its parts and to assess the cost against property benefited if it proceeds in accordance with the terms of the statutes on the subject. It is suggested that there is no power granted to construct a pumping station at the cost of the property benefited but that such an improvement must be paid for by a general municipal tax. As to this appellants are clearly in error. Section 8696 Burns 1914, which is §93 of the Cities and Towns Act of 1905, *supra*, as amended in 1909, provides that the board of public works shall have power "to lay out, design, order and contract for and execute the construction, alteration, and maintenance of all public drains or sewers within such city, * * * and to erect, maintain and operate works for the collection, treatment and disposal of sewage."

By this section power to construct a pumping station was expressly granted to the city to be exercised by its board of public works, but no method is provided by that section for the exercise of the power. A later section of the act of 1905, which is §8965 Burns 1914, Acts 1905 p. 219, 409, provides that where a power is granted by any section of the act to any officer or board and no method provided for the exercise of the power, and where provision is made by any other section of the act, or by any other law of the State, for the exercise of such power or similar power, which is applicable to the exercise of the authority so granted, then such other

section or other law, in so far as the same provides a method for the exercise of the power, may be followed as fully as if incorporated in and made a part of the section granting such authority or power. The power to construct sewers and to build sewage pumping stations are similar powers both granted by clause 7 of §8696 Burns 1914, *supra*. The legislature, having provided a method for the exercise of such power in respect to the construction of sewers, that method may be followed in the erection of a pumping station. No doubt the cost of the erection of such a pumping station can be assessed against the real estate to be benefited thereby to be included within a district to be formed for that purpose in accordance with the provisions of §8724 Burns 1914, *supra*.

The conclusion thus reached is strengthened by a consideration of §7599 Burns 1914, Acts 1909 p. 60, 62, by the terms of which all cities and towns are given power to provide the means for paying the cost of constructing plants for the purification of the discharge of sewers by assessing the cost thereof against all of the real estate situate within the corporate limits, such assessments to be in an amount not greater than the benefits received by each separate parcel, respectively, by reason of the construction of such plant. The statutes for the construction of public sewers and assessing the cost of the same against real estate in such municipalities are expressly made applicable so far as they can be to the construction of sewage purification plants and the assessing of the cost thereof against the real estate benefited thereby.

14. Another question is presented as to the power of a city under our statutes to construct a main sewer and one or more connecting lateral sewers as one work and under a single proceeding.

VOL. 186—40

From what has been said, it would appear that the solution depends upon the character of the connecting lateral sewer. If it is purely a local sewer the costs of which must be assessed entirely against abutting property, no reason is apparent why such a collateral might not be constructed in the same proceeding and as a part of the main sewer; but if the connecting sewer is one intended to receive sewage from other connecting sewers the cost of which, under the statute, is required to be divided in making the assessment and the portion in excess of the cost of a local sewer, apportioned among the lots and parcels of land for which it furnishes an outlet, then it would appear that a separate proceeding would be required involving the formation of a subordinate sewage district including the territory to which it affords an outlet; otherwise the assessments could not be made and apportioned as the statute (§8724 Burns 1914, *supra*) requires.

The record presents several other questions; but, in view of the conclusion reached it is not deemed necessary to consider them. What has been said is sufficient to show the construction which the court places on the statute and to indicate that the decision of the trial court is contrary to law. The judgment is reversed, with instruction to sustain appellants' motion for a new trial.

## OPINION ON REHEARING.

LAIRY, J.—Attorneys for appellees apparently misapprehend the meaning and effect of the opinion of the court in this case. The opinion does not hold that a city does not have power to construct a pumping station in connection with one or more main sewers and to pay the cost thereof by assessments on property benefited. It does hold that the statute

under which the proceeding was brought contemplates the formation of sewerage districts which shall include all lots and parcels of land that drain through the main sewer and its collateral connecting branches, and that a separate drainage district must be formed for each main sewer which finds an outlet either into a watercourse directly or through a pumping station or disposal plant. In the case before the court it appears that a main sewer is to be constructed entering the pumping station from the north which, with its tributary sewers, drains a district lying to the north of the proposed pumping station; and that another main sewer from the south is planned to connect by a siphon with said pumping station, which sewer and its connecting tributaries drains a district lying south of the pumping station. The fact that the two districts are separated by a river is not decisive or material. The material thing is that the territory lying south of the pumping station will not be drained through or benefited by any of the sewers to be constructed in the territory lying north of the pumping station, and *vice versa.* The opinion holds that when two main sewers are to be constructed, which with their tributary sewers will drain two separate and distinct districts of a city, that a separate drainage district must be formed for each, and that the sewers contemplated by the proceeding in each district must be let and constructed under separate contracts so that the cost of the construction of the sewers in each district may be ascertained and kept separate from the cost of sewers to be constructed in the other district, to the end that the lots and parcels of land in each district may be assessed with the cost of the sewers only which drain the district and benefit the lands located therein.

If it be found necessary in the construction of a deep sewer system under this statute to raise the sewage by

means of a pumping station in order to afford an outlet, it does not necessarily follow that a separate pumping station would have to be constructed at the mouth of each main sewer affording an outlet for each sewerage district as suggested by counsel. A single pumping station might provide a means of outlet for two or more main sewers draining separate sewerage districts. If the costs of constructing such a pumping station were to be paid by assessments it might be necessary to form a separate drainage district for that purpose including all lots and parcels of lands which would be drained by the main sewers to be connected therewith including their tributaries either present or prospective, and the pumping station might have to be let under a separate contract and the costs apportioned on the lands located within this district in proportion to benefits. The court is not required to decide the question suggested by counsel in argument and what is here said is intended merely as a possible answer to the argument of counsel and not as decisive of any question.

Petition for rehearing overruled.

NOTE.—Reported in 116 N. E. 584, 117 N. E. 642. Drains: lands subject to inclusion in a drainage district, Ann. Cas. 1915 C 14; property subject to special sewer assessment, Ann. Cas. 1915 D 386. See under (6) 28 Cyc 1122; (10) 28 Cyc 1151.