CITY OF HUNTINGTON ET AL. *v.* SONKEN.

[No. 13,259. Filed March 8, 1929. Rehearing denied September 13, 1929.]

*Milo N. Feightner* and *Emmett O. King*, for appellants.
*Claude Cline* and *Mart J. O'Malley*, for appellee.

NEAL, J.—This is an action by the appellee against the appellants for an injunction to restrain appellants from collecting a sewer assessment levied by the appellant city upon the lands of the appellee. Appellants' demurrer to the complaint was overruled. The court rendered judgment restraining the appellant city from collecting the sewer assessment. Errors assigned were the overruling of the demurrer to the complaint and error in each conclusion of law.

The special finding of facts discloses that the appellant city, by its common council, determined, by several ordinances duly adopted, to provide funds by the sale of municipal bonds in the sum of $300,000, to pay the cost of the construction of a main intercepting sewer, which improvement, when completed, would take care of the sewage of said city. The bond ordinance was adopted July 17, 1923. The board of works of appellant city on July 9, 1923, in conformity with the several ordinances of the said council, adopted a declaratory resolution for

the construction of a main sewer and provided "that the cost thereof should be paid out of the general fund of said city and not by any special assessment to be levied against the parcels and lots of land in said city." In order to pay for the main sewer out of the general fund, the sum of $300,000 was provided for by the bond ordinance of July 17, 1923. The board of works thereafter passed a second resolution wherein the time for receiving bids for the main sewer was set for July 30, 1923. The contract, after notice as provided by law, was awarded to the Breneman and Davenport Company, for the construction of the main sewer, which included what was known as item "E," called Riverside intercepter, which was a part of the main sewer to be constructed along Riverside drive of said city. Item "E" contained an itemized charge of labor, material, stone and dirt excavation, and also included inlet connections. By the provisions of said item "E," said main sewer was to be fifteen inches in diameter from 100 feet east of the intersection of Whitelock street to the eastern limits of the appellant city, and was to pass in front of the real estate owned by the appellee, which real estate fronted on Riverside drive. The main sewer, pursuant to the contract and item "E" thereof, was built along said Riverside drive in front of appellee's property, and was paid for out of the proceeds realized from the sale of said bonds.

On March 30, 1925, the board of works of appellant city, by resolution, provided for the construction of a local sewer on Riverside drive, to commence 100 feet east of the center line of Whitelock street and terminate at the east city limits. Said sewer was to be fifteen inches in diameter and to have manhole and house connections. A contract was awarded to Breneman and Davenport for house connections only, at the rate of $4 per foot. Whether or not such contract was pursuant

to legal notice is not disclosed by the findings. No contract was awarded for the construction of a local fifteen-inch sewer pursuant to said resolution. The board of works thereafter adopted an assessment roll pursuant to the local improvement resolution as follows: Main sewer, $5,533.25; house drains, $3,352; printing and bonds, $20; due contractor, $3,352; due city, $2,928; rebate, $2,628.18. Appellee's assessment as the owner of lots fronting on said Riverside drive, and based on the assessment roll as above set forth, was $270, his assessment including his proportionate share of the cost of the local sewer and house connections. The board of works, in making the assessment roll for the local sewer, made an estimate of the proper depth of a local sewer on Riverside drive and of its probable cost, as calculated in accordance with the unit prices as found in item "E" in the contract for the main sewer, and that the sum would be $3,352 for inlet and house connections, and the sum of $5,533.25 for the cost of the local sewer proper. Only one sewer was constructed, and that was the main sewer which was paid for out of the general funds of the city of Huntington, and which was constructed according to the ordinance and resolution adopted in 1923. The main sewer on Riverside drive was constructed some time after May 19, 1923, and the inlets to the abutting properties were constructed at the same time. The 15-inch main intercepting sewer was constructed under the plan and specifications adopted for the main sewer, and the inlets to the properties were constructed under the plans and specifications adopted for the local sewer.

Appellant predicates error on the overruling of the demurrer to the complaint and upon each conclusion of law. In this case, there was no motion for a new trial, and the facts found are within the issues formed by the pleadings. Appellant, by his exceptions to each conclusion of law, admits that the facts

are fully and correctly found, for the purposes of the exceptions; therefore, any antecedent action of the court in overruling a demurrer to the complaint, though erroneous, is harmless and, therefore, not reversible error. *Woodward* v. *Mitchell* (1895), 140 Ind. 406, 39 N. E. 437; *Smith, Trustee,* v. *Wells Mfg. Co.* (1897), 148 Ind. 333, 46 N. E. 1000.

Appellant concedes that there is no particular statute which expressly provides for the making of an assessment against abutting property owners in the manner as set forth in the special finding of facts. If there is no particular statute authorizing the board of works to make an assessment against appellee's property, we may well quote from the case of *Prevo* v. *City of Hammond* (1917), 186 Ind. 612, 116 N. E. 584, 117 N. E. 642, as follows: "Appellants attack this proceeding on the ground that the city, in an attempt to exercise a power granted, did not proceed in the manner prescribed by the statute. . . . If the municipality attempts some method other than that provided by the statute, or goes beyond the authority given, to that extent, it is without jurisdiction and its acts are void," citing *City of Bluffton* v. *Miller* (1904), 33 Ind. App. 521, 70 N. E. 989.

Appellants in their brief say: "No local sewer was constructed in the sense that a separate sewer was built along the intercepting sewer, but the inlets were connected with the intercepting sewer and said intercepting sewer was thus localized to permit it to be used as a local sewer by the abutting property owners. . . . After the completion a preliminary assessment roll was prepared on the basis of a certain amount being estimated for the local sewer and added to this was the cost of the inlets to the abutting properties. . . . True it is that there was at hand no particular statute which expressly provided for this situation." An examination of the various sections of the statutes in relation to the construction of

sewers by cities of the fourth class and the powers dele-
gated to the board of works of such cities in regard to the
construction, repair, and maintenance of sewers, brings
us to the same conclusion. Section 10567 Burns 1926,
provides, in part, that whenever it is the opinion of the
common council that it is advisable that any sewer or
sewers shall be, in whole or part, constructed and paid
for out of the general funds of said city and not by assess-
ment, such council, by ordinance, shall appropriate out
of the general fund money sufficient for such sewers to
be constructed, and such sewer or sewers, or parts there-
of, decided to be constructed shall, when constructed,
be paid for out of the general fund and not by assess-
ment.

The city council by ordinance ordained that a main
intercepting sewer should be constructed in the city of
Huntington, and that the cost thereof should be
paid out of the proceeds realized from the sale
of city bonds. The board of works, pursuant to
and in conformity with said ordinance, by resolution
declared that a main intercepting sewer should be con-
structed and the same be paid for out of the general fund
of said city and the proceeds realized from the sale of
city bonds. Thereafter, by confirmation resolution,
said board ordered said main intercepting sewer con-
structed and directed that notice be given to bidders.
A contract was awarded, after the receipt of bids for the
construction of a main intercepting sewer, including
inlets. The several ordinances and resolutions were
passed and the contract awarded in the year 1923. The
main intercepting sewer was constructed on Riverside
drive past appellee's property and was paid for out of the
general fund of said city. We are aware of no section of
our statute, either general or specific, in relation to the
construction of sewers applying to cities of the fourth
class that would permit a council or board of works two

years thereafter, by an independent proceeding, to localize a part of the main intercepting sewer, and, in such proceedings, assess the abutting property owners for a part of the cost of construction of the main intercepting sewer as was done in this case. In the case of *Spaulding* v. *Baxter* (1900), 25 Ind. App. 485, 58 N. E. 551, the court said: "The city in the first instance could adopt either of the two methods, but after it had adopted one and carried the work to completion, it could not then adopt the other as supplemental to the first."

Appellant urges that inasmuch as appellee did not proceed as provided in §10440 Burns 1926, which is to the effect that in the event of the execution of any contract for any public improvement, the validity of such contract shall not be questioned by any person, except in a suit to enjoin the performance of such contract instituted by such person within ten days from the execution of said contract or prior to the commencement of work thereunder, he is thereby estopped to question the validity of the proceedings under the declaratory resolution of said board commenced March 30, 1925. The court found that "no contract was awarded for the construction of a local fifteen-inch sewer pursuant to said resolution," and that "no local sewer was ever constructed." If no local sewer contract was ever awarded and, in fact, no such sewer ever constructed, we do not see how §10440, *supra,* can possibly apply in this case. It is true that the court found that a contract under said resolution was let for the construction of house connections at the rate of $4 per foot. The contract for house connections was awarded pursuant to the proceedings for the establishment of a local fifteen-inch sewer, which was never constructed; therefore, we do not see how, by said proceedings of 1925, an assessment can be made against the real estate of appellee for house connections that were connected to a sewer ordered con-

structed and which was paid for out of the general fund of said city, pursuant to said ordinances and resolutions of 1923. In the case of *Klien* v. *Nugent Gravel Co.* (1904), 162 Ind. 509, 70 N. E. 801, the court said: "It is clear that the method or mode adopted in making the assessment resulted in subjecting the property of appellant to an illegal assessment and burden. The question presented is not one of a mere irregularity upon the part of the engineer and common council in attempting to comply with the law, as it appears that no attempt was made to comply with the positive requirements of the statute. The facts present a case in which the council is clearly shown to have exceeded the power or authority with which it was invested. Its authority to levy an assessment against the property of appellant for the cost of the improvement was strictly statutory and in making it no other method than that prescribed by the statute could be legally adopted. In fact, it was only by reason of the authority or power conferred by the statute upon the common council of the city of Evansville that it had any right in the particular case to levy an assessment and fasten a lien against the property of appellant. Such statutory power is to be strictly construed, and, before appellee could successfully enforce his lien in this action, he would be required to show that the assessment upon which it is based was made within the power of the council."

Appellant insists that the property owners have no right to make connections with a municipal sewer without the consent of the city, and that the city can fix and determine the fees therefor, and cite in support thereof 28 Cyc 919; 4 McQuillin, Municipal Corporations §§1447-1449. Under the facts in this case, if the inlets or house connections were not included in the plans and specifications for the construction of the intercepting sewer and the same were not a part of the contract for

the construction of said sewer, although this judgment must be affirmed, it does not necessarily follow that the property owners abutting the intercepting sewer are entitled to connect with said sewer and thus receive a special benefit without complying with any reasonable ordinance now in force or that may be hereafter adopted by the common council or board of works of appellant city in the matter of connections with municipal sewers by the property owners desiring to deposit sewage in said sewers.

The court did not err in its conclusions of law.

Judgment affirmed.