## FAIRBANKS, MORSE & COMPANY V. CITY OF NORTH BEND.

FILED APRIL 9, 1903. No. 11,787.

1. **Municipal Corporation**: CONTRACT: ADVERTISING FOR BIDS. A city or village can enter into a valid contract for the erection or construction of any work authorized by section 69, article 1, chapter 14, Compiled Statutes, only after it has advertised for bids as required by subdivision XV of such section, and then only with some person in accordance with a bid tendered by him in response to such advertisement.

2. **Object of the Statute.** The object of that subdivision is to invite competition and to prevent favoritism and fraud; to attain that object it is essential that the bidders, so far as possible, be placed on equal footing, and be permitted to bid on substantially the same proposition, and on the same terms.

3. **Bid Changed After Expiration of Time**: ITS ACCEPTANCE UNAUTHORIZED. Where a bid, filed within the time fixed by the advertisement for receiving bids, is substantially changed and modified after such time, it is to be regarded as a new bid, received after other competitors, by the terms of the notice, had a right to presume that the contest was closed; consequently, its acceptance would be in violation of the provisions of said subdivision, as above construed, and would impose no liability on either party.

4. **Recovery of Deposit.** Where a bid, under the circumstances mentioned in the preceding paragraph, is accompanied by a deposit, as a guarantee that the bidder will enter into a contract in accordance with the terms of his bid if accepted, upon the refusal of the bidder, after his bid is accepted, to enter into such contract, he is entitled to a return of his deposit, because, under such circumstances, such bid and its acceptance can not be made the basis of a valid contract.

5. **No Estoppel.** In an action to recover such deposit, the plaintiff is not estopped to deny the validity of the bid and its acceptance, nor does the maxim, *Potior est conditio possidentis*, apply in such a way as to defeat a recovery.

ERROR to the district court for Dodge county: JAMES A. GRIMISON, DISTRICT JUDGE. *Reversed.*

*George L. Loomis* and *D. L. Johnson,* for plaintiff in error.

*E. F. Gray, contra,*

ALBERT, C.

The defendant city was about to construct a system of waterworks, and, to that end, published a notice calling for sealed bids on the labor and material required for such purpose. The notice made reference to the specifications on file in the office of the city clerk, which detailed, among other things, a steam engine and duplex pump, and stated that "bids will also be received on 20 H. P. gasoline engine; also on a triplex power pump, capacity 450,000 gal. per 24 hours, to be substituted for the steam plant." It was also stated in the notice that bids would be received until 7 P. M., June 8, 1899, and that: "Each bid must be accompanied by a certified check for $200 on any local bank of this city in favor of the city of North Bend as a forfeit in case the work is awarded to the bidder and he should fail to enter into contract and file a good and satisfactory bond within five days of notice of awarding the work to the bidder. The check is to be returned to the bidder as soon as he has complied with the above requirements."

Within the time specified in the notice for receiving bids, the plaintiff filed a sealed bid on the gasoline engine and triplex pump; the bid was accompanied by a certified check for $200, as required by the terms of the notice. The bid was as follows:

"OMAHA, June 8, 1899.

"*City of North Bend, North Bend, Neb.*

"GENTLEMEN: We hereby propose to furnish you the following:

    1 22 Actual H. P. Fairbanks-Morse gasoline engine complete.

    1 450,000 gal. Gould's triplex power pump delivered and set up, for the sum of one thousand four hundred and fifty ($1,450) dollars.

"Enclosed please find our certified check for $200 on the Bank of North Bend, dated June 8th, 1899.

    "Yours truly,     "FAIRBANKS, MORSE & CO.,

                  "By EDWARD REITER, *Agt.*"

40

The bids were opened after 7 P. M. of June 8, 1899, there being one other bid on the machinery covered by the bid of the plaintiff. Neither bid was accepted on that day, and the city council adjourned their consideration to the following day. On the following day an agent of the plaintiff supplemented its bid with the following offer in writing, made openly to the city council:

"NORTH BEND, NEB., June 9, 1899.

"*To the Hon. Mayor & Members of the City Council of the City of North Bend, Neb.*

"GENTLEMEN: In accordance with your plans and specifications for your city waterworks and in conformity to our formal bid for power and pump, we will furnish you one of our actual twenty-two (22) horse power Fairbanks-Morse gasoline engines of latest improved make, complete with electric and torch igniter with 5 bbl. gasoline supply tank and all necessary fittings. Also one (1) Gould's triplex power pump with 8x12 cyls.—guaranteed capacity of 450,000 gals. of water, per 24 hours. All to be delivered and erected on good and substantial foundation and connect same to your suction and discharge pipe, ready to be operated successfully. The engine to be furnished with friction clutch and directly connected to the pump. You to have the privilege of specifying a Smith Vail triplex power pump with 8x10 cyls. as specified in the bid of the Fremont Foundry and Machine Shop Co.'s bid, at the same price, you to take the risk of its being the capacity required, this choice however to be determined on or before June 15, 1899. All for the sum of fourteen hundred and fifty dollars ($1,450) payable when set up and operates successfully. Your acceptance hereof and approval of bonds as required shall be a conclusion of the contract between ourselves and the city of North Bend, Neb.

"Accepted as hereinbefore stated this date.

"FAIRBANKS-MORSE & CO.,

"Per HENRY COFFEEN, *Salesman.*

"J. C. NEWSON, *City Clerk.*

"HUGH ROBERTSON, *Mayor.*"

Thereafter, on the same day, the defendant accepted the plaintiff's bid, as supplemented and modified by the open bid made by the agent of the plaintiff on the 9th day of June, 1899. Some negotiations followed, looking to the execution of a formal contract between the parties covering the offer of the plaintiff to furnish the machinery, and the acceptance of such offer by the defendant. It is unnecessary, we think, to follow those negotiations. It will suffice to say that the plaintiff finally refused to execute a contract which the defendant had caused to be prepared, insisting that its terms were more onerous than was justified by the terms of the bid and the published notice. The defendant refused to modify its terms, and negotiations were broken off, and the defendant readvertised for bids. The plaintiff afterward demanded a return of its deposit, but the demand was refused. The plaintiff then brought this action against the defendant for the amount of such deposit. The defendant answered, setting up the refusal of the plaintiff to enter into a contract in accordance with the terms of its bid, and consequent damages. It was conclusively shown that such damages exceeded the amount of the deposit. The court directed a verdict for the defendant, and gave judgment accordingly. The plaintiff brings error.

In the foregoing, we have not attempted to set out all the facts in this case; on the contrary, we have purposely eliminated therefrom everything which does not bear on one question urged by the plaintiff, which we consider decisive of this case, and that is, was the defendant bound by the acceptance of its bid on the 9th day of June, 1899? Before considering that question, it may be well to say that the authority of the plaintiff's agent who made the supplemental bid on that day is denied by the plaintiff. But in our view of the case, we do not deem it best to go into the question of the agent's authority in that behalf, and for present purposes we shall assume that he was duly authorized.

Subdivision XV, section 69, article 1, chapter 14, Com-

piled Statutes (Annotated Statutes, 8726), so far as material at present, is as follows:

"That all contracts for the erection or construction of any such work, or any part thereof, shall be let to the lowest responsible bidder therefor, upon not less than twenty days' public notice of the terms and conditions upon which the contract is to be let, having been given by publication in a newspaper published in said city or village, * * *."

It will be conceded, we think, that valid contracts, of the character mentioned in that portion of the statute quoted, can be made by the city only after it has advertised for bids, and then only with some person in accordance with a bid tendered by him in response to such advertisement. *Fulton v. City of Lincoln,* 9 Neb. 358; *State v. Saline County,* 19 Neb. 253; *People v. Commissioners of Buffalo County,* 4 Neb. 150; *State v. York County,* 13 Neb. 57; *State v. Cornell,* 52 Neb. 25, 37. The object of the statutory provision under consideration is to invite competition and prevent favoritism and fraud. *State v. York County, supra.* To attain that object it is essential that the bidders, so far as possible, be put on terms of perfect equality, and that they be permitted to bid on substantially the same proposition, and on the same terms. In the present case the notice required the bids to be filed by seven o'clock of June 8, 1899. Every bidder had a right to presume that no bids would be received after that time. The plaintiff's bid, which had been filed within that time, was never accepted as made; the bid that was accepted was that bid as materially changed and modified by the supplemental bid filed on the 9th day of June, and after the time fixed by the notice for receiving bids. Under such circumstances the bid which was accepted can be regarded in no other light than as a new bid, and as one made after all other competitiors, by the terms of the notice, had been given to understand that further bids would not be received. The bidders, consequently, were not on equal terms, and were not bidding on the same proposition, as

will be seen by a comparison of the original bid and the supplemental bid with the notice. In other words, the purpose of he statute, to invite competition and prevent favoritism and fraud, would be completely thwarted, were a bid, under such circumstances, to be upheld. It seems clear to us that by the acceptance of plaintiff's bid, the parties were placed in no different position than they would have occupied, had all the bids filed within the time fixed by the notice been rejected, and the defendant, without readvertising, had accepted a new bid, filed by the plaintiff after that time.

But now the question arises whether the plaintiff is estopped to deny the legality of the proceedings under which its bid was accepted. We do not think it is. Mutuality is of the essence of an estoppel. That being true, it would follow that if the plaintiff is estopped to deny the legality of such proceedings, the defendant is also estopped to do so. If that be true, then, in the light of the cases hereinbefore cited, the defendant could have been compelled by mandamus to enter into a contract with the plaintiff, in accordance with the bid. In other words, a court would have compelled the defendant to enter into a contract in disregard of mandatory provisions of the statute. The bare statement of that proposition carries with it its obvious refutation.

Neither does the maxim, *Potior est conditio possidentis,* apply in this case. There is no evidence that the plaintiff's bid was made or accepted with any intention to evade the statute, or to make a contract contrary to law; nor have we any reason to think it was. But, had it been made and accepted with that end in view, the most that could be said of the transaction would be that it was an agreement to enter into an illegal contract. The plaintiff refused to carry out its part of the agreement. It is the policy of the law to encourage the abandonment of an illegal project. Consequently, it has been held that where one of the parties to an illegal contract pays money thereon to the other, he may recover it back before the

contract is executed, but not afterwards. *Smith v. Bickmore*, 4 *Taunt.* (Eng.) 474; *Tappenden v. Randall*, 2 Bos. & Pul. (Eng.) 467; *Lowry v. Bourdieu*, 2 Doug. (Eng.) 468; *White v. Franklin Bank*, 22 Pick. (Mass.) 181; *Spring Company v. Knowlton*, 103 U. S. 49. Hence, putting the worst possible construction on the conduct of the parties looking towards the making of an illegal contract, they stopped short of the consummation of any illegal purpose, and the plaintiff is entitled to a return of the deposit.

It is recommended that the judgment of the district court be reversed and the cause remanded for further proceedings according to law.

Duffie, C., concurs.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings according to law.

REVERSED AND REMANDED.