HIRSCH *et al.* v. MAYOR AND ALDERMEN OF CITY OF VICKSBURG *et al.*[*]

(Division A. Oct. 6, 1924. Suggestion of Error Overruled Nov. 3, 1924.)

[105 So. 492. No. 24386.]

1. MUNICIPAL CORPORATIONS. *Specifications held not to invalidate paving contract let to lowest bidder.*

Paving contract let to contractor who was "lowest and best bidder," as required by city charter, *held* not void merely because specifications required bidding contractor to specify time within which he could complete work, gave city option to withhold payment without interest for certain period, and provided that, where any of sections of specifications were written by typewriter, and also printed, typewritten part should prevail.

2. Municipal Corporations. *Paving contract, entitling city to delay payment of amount due contractor, held not violative of statute.*

Paving contract, providing for delay in payment of amount due contractor at option of city, without payment of interest, *held* not violative of Laws 1918, chapter 209, prohibiting contracting of interest-bearing debt unless authorized by majority vote.

3. Municipal Corporations. *Board vested with discretion in awarding contract to lowest bidder.*

In letting paving contract to lowest and best bidder, as required by city charter, the city board is vested with a certain amount of discretion. .

---

*Headnotes 1. Municipal Corporations, 28 Cyc., p. 1035; 2. Municipal Corporations, 28 Cyc., p. 1036 (Anno); 3. Municipal Corporations, 28 Cyc., p. 1031.

Appeal from chancery court of Warren county.

Hon. E. N. Thomas, Chancellor.

Suit by Jacob K. Hirsch and another against the mayor and aldermen of the city of Vicksburg and others. Judgment of dismissal, and plaintiffs appeal. Affirmed.

*Brunini & Hirsch,* for appellants.

I. *Powers of municipalities are strictly construed.* 28 Cyc. 274; *Leonard* v. *Canton,* 35 Miss. 189; 28 Cyc. 279-657; 28 Cyc. 1043-1044; 19 R. C. L., 768; 19 R. C. L. 1061; 19 R. C. L. 1063-1068; *Bittick* v. *El Paso,* 247 S. W. 892; *Edwards Hotel Company* v. *City of Jackson,* 96 Miss 547; *Sykes* v. *Columbus,* 55 Miss. 115; *Greenville* v. *Laurent,* 75 Miss. 456; *Crittenden* v. *Booneville,* 92 Miss. 277; *Hazlehurst* v. *Mayes,* 96 Miss. 656; *Jackson* v. *Williams,* 92 Miss. 301; *Stietenroth* v. *Jackson,* 54 So. 955; *Wise* v. *Yazoo City,* 96 Miss. 507; *Alabama etc., Co.* v. *Turner,* 52 So. 261.

II. *Bidders must be placed on a common basis.* Section 25, City of Vicksburg Charter, 19 R. C. L.

1070; *Fairbanks, Morse & Company* v. *North Bend* (Neb.), 94 N. W. 537; *Wing* v. *Cleveland,* 9 Ohio Dec. 507; *Upington* v. *Oviatt,* 24 Ohio St. 232; *Kneeland* v. *Furlong,* 20 Wis. 437; *Bennett* v. *Emmetsburg,* 115 N. W. (Iowa) 582; *Hoosier Construction Co.* v. *Seibert* (Ind.), 114 N. E. 981; *Packard* v. *Hayes* (Md.), 51 Atl. 32; *Stansburg* v. *Poindexter* (Cal.), 99 Pac. 182; *Johnson* v. *Atlantic City* (N. J.), 88 Atl. 950; *Armitage* v. *Neward* (N. J.), 90 Atl. 1035; *MacKinnon* v. *Neward* (N. J.), 100 Atl. Rep. 694; *Hannan* v. *City of Lawton,* 107 Pac. 646, 30 L. R. (N. S.) 214.

III. *Governing power of municipality cannot delegate authority.* Section 25 of Vicksburg Charter; *Macon* v. *Patty,* 57 Miss. 378; *Kidder* v. *McClanahan,* 126 Miss. 179, 19 R. C. L. sec. 195; *California Imp. Co.* v. *Reynolds et al.* (Cal.), 55 Pac. 802; *Kuhn* v. *City of Buffalo,* 145 N. Y. S. 910; *Bolton* v. *Gilleran,* 38 Pac. 881.

IV. *Proposals must invite bids and not repel competition.* 28 Cyc. 660; *Attorney-General* v. *Detroit* (Mich.), 118 N. W. 935; *Detroit* v. *Hosmer,* 44 N. W. 626; *Arthur* v. *City of Petaluma,* 151 Pac. 183; *Anderson* v. *Fuller* (Fla.), 41 So. 684.

V. *Provisions cannot be indefinite and confusing.* Article 25, section 28, Vicksburg Charter; Chapter 209, Mississippi Acts 1918.

VI. *Motive of plaintiff cannot be questioned. Packard* v. *Hayes,* 51 Atl. 32; *Goshert* v. *Seattle* (Wash.), 107 Pac. 860; *Times Pub. Co.* v. *Everett,* 43 Am. St. Rep. 865; *Hanan* v. *City of Lawton,* 107 Pac. 646, 30 L. R. N. W. 214.

*Flowers, Brown & Hester,* for appellees.

I.  We recognize the rule that "municipal author-
ities cannot lawfully ask each bidder to make his own
plans and specifications." Such rule certainly has no
bearing on this case where elaborate plans and speci-
fications were adopted and filed by the city. And we
likewise admit the existence of the rule that "bidders
must be placed on an equal footing and be permitted to
bid on the same terms."

Where is there any showing in this record of a fail-
ure to strictly meet the requirements of this rule? The
Oklahoma case—*Hannon* v. *City of Lawton,* 107 Pac. 646,
the opinion in which counsel for appellants sets out in full
in his brief, has absolutely no bearing on the case at bar.
The Wisconsin case referred to, *Kneeland* v. *Freelong et
al.,* 20 Wis. 460, was disposed of on an entirely different
point.

Counsel for appellants brings to his aid several New
Jersey cases which would seem to support his contenton.
A careful analysis of these cases will, however, reveal
the fact that the court in each case was dealing with an
entirely different situation than that presented by the
case at bar.

We call the court's attention to the fact that this
same clause has heretofore been carried in the specifi-
cations. And Merrill has always heretofore bid with
reference thereto and fixed his own time. He has been
bidding and fixing his time for years past. It seems a
little strange that it never occurred to him before that
this clause was productive of such awful consequences.

II. *Engineer given right to determine whether or not
the typewritten portions of the specifications should pre-
vail over printed portions.* The clause itself distinctly
says this can be required "at the option of the mayor and
aldermen of the city of Vicksburg." Where is there any
right, and who would undertake to say seriously that

under the clause referred to it would be left to the engineer to say whether credit of six to nine months shall be extended the city? What does he know about the city's fiscal affairs? The clause in question distinctly reserves this power to the mayor and board of aldermen, and does so in express language.

We recognize the rule announced in 19 R. C. L., section 195, and in *Macon* v. *Patty,* 57 Miss. 378, and in the California case referred to by counsel for appellant, to the effect that the municipal authorities "cannot delegate to one of their members, or to any other municipal officer the power to decide upon legislative matters." There is no question of that sort involved in the case at bar. No legislative matter was left to his discretion.

III.   The provisions as to payment were not so vague as to raise a protest until after the bids were opened, at least none was made or filed until the day after. And we find no provision in the charter section referred to that would prevent the city from obtaining an extension of time on the payment for the work if such became necessary. That the city authorities reserved to themselves the right to secure an extension of from six to nine months without interest, should such extension be found necessary, would, it seems to us, be no ground for complaint by a taxpayer.

IV.   This was not "an interest bearing debt" and consequently chapter 209 of the Acts of 1918, has no bearing on it at all.

V.   *The motive of complainant in filing the bill.*   As to the position occupied by appellant see: *Atlantic Gas & Water Company* v. *Atlantic City et al.,* 63 Atl. 997.

The learned chancellor's decree should be affirmed.

*W. I. McKay, Hirsch, Dent & Landau,* also for appellees.

The "moral interest" of I. W. Merrill, the disappoint-
ed and disgruntled higher bidder, calls up Dryden's
imagery:

> "Next stood Hypocrisy, with holy leer,
> Soft smiling and demurely looking down,
> But hid the dagger underneath the gown."

Not a single taxpayer, who had no other interest than
that of the public was or could be induced to touch the
suit, as a cat's paw to pull Merrill Road Improvement
Company's chestnuts out of the fire of fair competition,
and cause the public to lose about nine thousand dollars.

In truth, this is not a suit in good faith by taxpayers
on behalf of the public; but, on the contrary, it is a suit
in the mere name and pretense of taxpayers, at the in-
stance and solely on behalf of a disappointed higher
bidder and his attorneys for the sole purpose of specu-
lating in the chances of another bid, and for the attor-
ney's fees contingent upon and incident to success in the
litigation. This higher bidder, bid with several others,
on the same terms and conditions, and one of the other
bidders committed the heinous offense of underbidding
special privilege.

> "The Devil was sick—the Devil a monk would be;
> The Devil was well—the Devil a monk was he."

When you trespass upon the preserves of special priv-
ilege, he raises his pious hands in holy horror at the
brazen effrontery of not dotting every i and crossing
every t of the law; but, if you will respect his favored
position, his generous and broad-minded attitude is:
"What is the Constitution among friends anyway!"

We mistake the legal and natural effect of this record,
if this court should be moved to any degree of sympathy
for or tolerance with the real party in interest in this
suit. This suit was not motived *pro bono publico,* but
purely for the private, personal and selfish interests of
special privilege. This court would, of course, lend an
attentive and responsive ear to the meritorious com-
plaint of a *bona-fide* representative of the taxpaying pub-

lic, who was not so evidently and exclusively self-centered as to forget even sufficiently to allege in his bill of complaint that he was also suing for the public; but scant sympathy will be aroused by the welching wails of special privilege, a wolf, shedding crocodile tears, in the guise of the sheep's clothing of a purse-threatened public.

A court of equity has the inherent, efficient, and beneficent power and duty of looking through the form to the substance in such cases. *Nicrosi* v. *Calera Land Co.*, 22 So. 147.

A wolf in sheep's clothing has but short shrift in a court of conscience. Of course, as unsuccessful higher bidders, the Merrill Road Improvement Company has no standing whatever in this case. *Atlantic Gas & Water Co.* v. *Atlantic City et al.*, 63 Atl. 997.

*All charter requirements were substantially complied with in giving notice to bidders, and in awarding the contracts.* The charter provides that the "board shall accept the lowest and *best* bid." This vests in the board the exercise of a discretion to select not only the lowest, but the best bid, and, as held by all authorities, the lowest bid is not always the best bid, and such a provision does not require that the lowest bid in amount be accepted. This provision introduces into consideration other elements, such as time, ability, quality of work, besides the lowest bid in amount.

(a) It is contended that leaving to each bidder to state the time in which he will perform the work is violative of the charter provisions. As we have heretofore pointed out herein, the charter only requires that notice be given of the "contemplated work;" and there is no requirement that the time be prefixed by the city either in the notice or in the specifications.

(b) It is next contended that leaving to the city engineer to say whether the printed or typewritten portions of his specifications should control was the at-

141 Miss.—53.

tempted delegation of the non-delegable duty of the city council. This contention is without merit. There is no attempt to delegate such duties or powers; all that was provided for was that the city engineer was to see to the proper performance of the details of the work that involved technical and expert engineering knowledge and experience to accomplish.

(c) The method of payment provided for is clearly in entire harmony with the charter, clearly permitted by the charter, and in fact more definite for all concerned than the charter limits, and more favorable to the city from every point of view.

(d) It is further contended that the method of payment provided for, violates chapter 209, of the Laws of 1918. This is untenable. The act prohibits incurring interest-bearing obligations without an election; while the method of payment provided for in the case at bar expressly stipulates that the city shall pay no interest on any deferred payments.

(e) And lastly it is contended that the motives of the complainants in filing the bill in this suit are immaterial. This contention is hopelessly untenable. It may be that the motives of nominal parties are immaterial; but the motives of the real parties in interest are always controllingly material and jurisdictional. As a matter of course, not only the motives, but also the rights of nominal parties, are immaterial; because a court of equity, as shown heretofore herein, looks through the form of the nominal parties to substance of the motives and rights of the real parties in interest in the suit, and determines the suit according to the motives and rights of such real parties in interest and without reference to the pretended motives and fancied rights of the straw parties.

I. W. Merrill is the designing and deceitful Jacob undisguised; the nominal complainants are Jacob with the kid skins on his hands and neck, posing as taxpayers; the lower court was to have blindly played the pitiable

role of poor old Isaac; and the taxpayers or public is Esau. "The best laid schemes o'mice an' men gang oft agley," for by its deception-discerning decree the lower court, Isaac, said:

"The voice is Jacob's voice, but the hands
are the hands of Esau."

This wise and fortunate discernment of the attempted deception will not be lost by this court, and Esau's blessing given to the disguised and deceitful Jacob, by taking from the city about nine thousand dollars for the sole benefit of I. W. Merrill and his partners.

Argued orally by *John Brunini,* for appellant, and *R. L. Dent* and *J. T. Brown,* for appellees.

HOLDEN, J., delivered the opinion of the court.

The suit was instituted in chancery by two resident taxpayers of the city of Vicksburg to restrain the city from entering into a contract with Finch *et al.,* appellees, for the paving of certain streets in the city; the ground of complaint being that the letting of the contract by the city to Finch was void because the mayor and aldermen violated the provisions of the city charter authorizing them to let contracts for such work to "the lowest and best bidders." After hearing all the testimony, the chancellor dismissed the bill, and the two complaining taxpayers appeal.

The record discloses that, while the suit is brought and prosecuted in the name of the two taxpayers, appellants, the real party complainant in interest is the Merrill Road Improvement Company, which was an unsuccessful bidder; its bid being about nine thousand dollars higher than the bid of the appellee Finch, at the letting of the paving contract. This Merrill Company was an uncomplaining bidder at the letting of the contract, and its testimony, through Mr. Merrill, shows that the plans and specifications embodied in the contract for the proposed paving

were the standard specifications used by the city for
such work for many years, and that the Merrill Company
had bid and secured many contracts under these standard
specifications in the past.  The Merrill Company, after
failing to secure the paving contract, instigated this
suit through the two appellant taxpayers to cancel the
paving contract let to appellee Finch, and restrain the
city from proceeding to pave the streets under the letting
to appellee Finch.  And while it is clear from the record
that it is really a suit by an unsuccessful bidder, and rec-
ognizing that there would be, legally speaking, a differ-
ence in the rights of an unsuccessful bidder and the
rights of taxpayers of the city, we shall consider the case
as though it were a suit by two taxpayers to cancel a
void contract detrimental to the public interest.

Briefly stated, the appellants contend that on account
of the specifications for the proposed paving being so
indefinite, there could be no competition between the
bidders at the letting of the contract, and that, the com-
petition in the letting of the contract having been de-
stroyed on account of the indefinite specifications, which
also afforded opportunity for favoritism to bidders, there
could be no letting of the contract "to the lowest and
best bidder," as required to be done by section 25 of the
Charter of Vicksburg, which is the only authority given
the board of mayor and aldermen to let contracts for
such public improvements.

The record shows that all of the requirements of the
charter, in reference to publication of notice to bidders,
etc., were complied with by the board, and the only com-
plaint is with regard to the indefinite and insufficient
specifications submitted by the city to the bidders for the
proposed paving.

The appellant presents four reasons, which merit dis-
cussion, why the specifications were so indefinite as to
prevent the bidders from competing in their bids for
the contract for paving.  The reasons are as follows:
First, "that the specifications left to the bidders to state

the time within which they would complete the work;" second, "that the provisions for payment were vague and indefinite and confusing," in that the city reserved the option to withhold from payment fifty thousand dollars to one hundred thousand dollars, for six to nine months, without interest, due on the contract; third, "that the method of payment violated chapter 209, Acts of 1918;" and, fourth, that the provision in the specifications that all typewritten sections of the specifications shall have precedence over printed sections, though left with the engineer as to which shall prevail, makes the contract to be bid upon confusing and indefinite, to the extent that bidders cannot intelligently compete upon the price at which they will do the work.

We do not think the form of specifications submitted by the city for competitive bids was such as to make the letting of the contract void. The testimony in the record, as passed upon by the chancellor, shows that the plans and specifications here involved were standard, and that all of the bidders, it appearing that there were several bidders at the letting, had an equal chance to bid for the contract on a common basis, and that the provisions and variations in the specifications complained of by the appellants are not such as to destroy competitive bidding, and thus prevent the letting of the contract "to the lowest and best bidder,". under the said city charter provision. It appears from the record that the contract was awarded, in fact, to the lowest and best bidder, whose bid was submitted along with several others, and was several thousand dollars lower in price than that of the others.

The provision in the specifications which requires the bidding contractor to specify the time in which he can complete the work was submitted to all the bidders alike, and was a competitive part of the letting of the contract, and at which no bidder could complain. This provision was made for the advantage of the city in getting the lowest possible bid submitted for the work, and to induce

competition in the bidding by contractors who might be at the time engaged in work in other parts of the country, who could do the work for a less price, if given a longer or a particular time in which to do it.

As to the second point, with reference to the withholding of the payment of fifty thousand dollars to one hundred thousand dollars, for six to nine months, without interest, at the option of the city, we are unable to see wherein this provision in the specifications, which was intended to be an advantage to the city, could materially affect or destroy competition between the bidders for the contract. It is true the city might not exercise the option to withhold payment of the money, yet it reserved this advantage and benefit, if it desired to exercise it, and the stipulation in the specifications was before all of the bidders alike, and they were afforded the same chance to bid on an equal basis for the contract of construction. We do not think this provision of the specifications destroyed competition and thus violated the charter provision, which requires that in such contracts ''the board shall accept the lowest and best bid.''

The contention that the delay in the payment of the amount due the contractor by the city is in violation of chapter 209, Laws of 1918, which provides in section 2 that no interest-bearing debt shall be incurred by a municipality unless authorized by a majority vote, is not maintainable for several reasons; one of them being that there is no incurrence of an interest-bearing debt by the municipality as contemplated by the statute, because the debt here involved, if the city exercises its option to do so, does not bear interest, and, besides, the money secured to pay for the paving contract is obtained from some other source, or by a bond issue determined by the people in the way authorized and the funds to pay for the paving are presumed to be on hand.

It would be too far-fetched, and not in accord with the language and intent of the statute, to say that the bidders might make their bids on a basis that, since the

money to be withheld by the city would draw no interest, they must provide for such interest in their bids for the paving, and that in this way the debt would be interest-bearing and one incurred within the contemplation of the said chapter 209, Laws of 1918. We do not think this provision violates the statute in question.

As to the fourth and last ground urged, to-wit, that the contract here let was void because the specifications provided that, where any of the sections of the specifications were written by typewriter and also printed, the typewritten part should prevail over the printed, though it shall be left with the engineer as to which shall be used, we do not think the position is tenable, because the variation or conflict between the typewritten and printed part of the specifications here involved cannot materially affect the question of competition between the bidders in the letting of the contract. The principal change from printed to typewritten sections of the specifications is with reference to the withholding of the amounts due the contractor by the city, which withholding of payment was to be at the option of the city, and we do not think the stipulation, providing that the engineer shall decide whether the printed or typewritten part shall have precedence, could materially affect or tend to destroy the competition in the bidding, which is necessary in order that the charter of the city may be complied with in letting the contract to the lowest and best bidder.

No fraud is charged in the case. The argument made that the indefiniteness of the specifications affords opportunity for the city authorities to show favoritism to the successful bidder by not exercising the option to withhold the payment of the money due the contractor, etc., is unavailing, because the members of the board are presumed to be honest servants of the city, and are entrusted by the people to act for the best interest of the city; and furthermore, if any favoritism could be shown, it would be after the bidding is over and the contract is let, favoritism in advance apparently could not exist,

so far as this record discloses, there being no fraud charged; and, even though indulgences were afterwards extended by the board to the contractor, which may be considered as a favor, and which is often done by public authorities in the way of extending the time in which to finish the contract, etc., this would be no more than what is a common, and not improper, practice.

The board is vested with a certain amount of discretion in letting the contract to the lowest and best bidder. It is true that the ideal specifications would be so definite that the competition would be confined entirely to the exact amount of the bid for the work; such a perfect proposal by the city is conceivable, but not always practicable, from the city's standpoint, and where the specifications contain some indefinite provision wherein the city reserves to itself certain advantages in the letting of the contract the method of proposal by the city is such as permits effectual competition, is valid, and complies with the requirement that the contract be let to "the lowest and best bidder."

The bid of the appellee Finch seems to have been the lowest and best bid offered among the several competitors at the letting of the contract, and it does not appear that any better bid could have been obtained, or could be secured now, for the paving contract involved; and Mr. Merrill in his testimony admits he had a fair and even opportunity in bidding with the other bidders on the plans and specifications covering the proposed paving improvement of the city of Vicksburg.

We have omitted discussing the question of whether Merrill, the unsuccessful bidder, but who is in this case the real party in interest, can maintain this suit through the two taxpayers, nominal complainants, since he shows no right in himself to have the contract, nor does he make it appear that the public interest has suffered on account of the letting of the contract to the appellee, because it is unnecessary to do so.

The judgment of the lower court is affirmed.

*Affirmed.*