## DEUTSCH v. OKLAHOMA CITY et al.

No. 19610. Opinion Filed Sept. 18, 1928.

Withdrawn, Corrected, and Refiled
Oct. 2, 1928.

D. S. Levy and Shirk, Danner & Lindley, for plaintiff in error.

Twyford & Smith, for defendants in error.

HEFNER, J. As a resident taxpayer, A. E. Deutsch, the plaintiff in error, as plaintiff, brought this action in the district court of Oklahoma county against the city of Oklahoma City, a municipal corporation and defendant in error herein, to enjoin the defendant from entering into a contract with the firm of Maney, Alley & Watson for the construction of a bridge over the North Canadian river on Robinson street in Oklahoma City, and from expending any of the funds of Oklahoma City for that purpose, upon the ground that such contract would be illegal and void because the bids made on the project were not competitive bids as required by the city charter.

It is contended the bids were not competitive because the plans and specifications did not state the number of working days required within which the work was to be completed. The plans and specifications contained this provision:

"The word 'contract' shall mean collectively, all of the covenants, terms and stipulations contained in the various portions of this contract, to wit: advertisement, specifications, plans, instructions to bidders, bids, contract and bonds.

"The word 'advertisement' shall mean all of the legal publications pertaining to the work of this contract."

The advertisement or notice to bridge contractors as published in the Daily Record was as follows:

"Notice to Bridge Contractors.

"Sealed proposals will be received by M. Peshek, Jr., city clerk, Oklahoma City, Okla., up to 12 o'clock m., July 3, 1928, duplicate of each proposal must be filed with the city auditor of said city and will be opened and considered by the council in the council chamber in the City Hall building at 4 o'clock p. m., July 3, 1928, for furnishing all tools, labor, material and equipment necessary to construct a reinforced concrete and steel bridge approximately 800 feet long over the North Canadian river on South Robinson avenue in Oklahoma City, Okla.

"Each proposal filed with the city clerk must be accompanied by a check certified by a bank located in Oklahoma City in the amount of 3 per cent. of the amount bid, payable to M. Peshek, Jr., city clerk; the same to be forfeited to the city in case the successful bidder fails to enter into contract and furnish the required bonds within the required time. Each bidder shall agree to enter into contract within 7 days after the acceptance of his bid. Also to commence work within 15 days after signing the contract, and to complete the same within 200 working days after commencement.

"Each bidder shall accompany his bid with a sworn statement in writing that the bidder has not directly or indirectly entered into any agreement, express or implied, with any other bidder or bidders, having for its object the controlling of the prices or amounts of such bid or bids, the limiting of the bidder or bidders, the parceling or farming out to any bidder or bidders or other persons any part of the subject-matter of the bid or the profits thereof.

"The contractor to whom the contract shall be awarded shall execute to the city a good and sufficient bond in the sum equal to 100 per cent. of the contract price, conditioned

for the faithful execution of the work and protection of said city against any and all loss or damage caused by reason of failure or negligence of the contractor to perform said contract or improper execution of the work.

"The contractor to whom the contract shall be awarded shall execute to the state of Oklahoma a good and sufficient bond in the sum of the full contract price, conditioned for the payment of all labor and material used in the work.

"Plans and specifications can be obtained from the city clerk by the payment of $25. No refund. The council reserves the right to reject any and all bids."

"M. Peshek, Jr. City Clerk."

The plaintiff contends the city clerk inserted in the advertisement to bidders a requirement that the work should be completed in 200 working days and that he inserted this limitation without any authority or order from the city council. He further contends that in order to have competitive bidding it is necessary that the 200-day limitation appear in the plans and specifications or, in lieu thereof, that the city clerk should have been directed by the official board to insert the 200-day limitation in the notice. There was no formal action of the board in directing the clerk to insert the 200-day limitation in the notice. The city council directed the clerk to advertise for bids to be received July 3, 1928, without specifying what conditions should go in the advertisement. The plans and specifications were prepared by the city engineer and were adopted by the city council. When the city clerk was directed to advertise for bids the notice to bidders was prepared by the city engineer's office. The city clerk signed it and caused the same to be inserted in the newspaper. The notice to bidders notified them that the work must be completed within 200 working days; that they must enter into a contract with the city within seven days after the acceptance of the bid, and must commence work within 15 days after signing the contract.

The construction of the bridge and the letting of the contract is governed by section 4, article 9, of the charter of Oklahoma City. A portion thereof is as follows:

"All contracts pertaining to public improvements, maintenance of public property, public printing, purchases of supplies and all other contracts upon the part of the city of whatever character involving an outlay of as much as $300 shall be based upon specifications approved by the board of commissioners. Such contracts shall be entered into only after advertisement not less than three times in a daily newspaper published in the city, or in the official city publication, if any there be, inviting competitive bids. Such competitive bids shall be sealed, and one copy of each bid shall be filed with the city clerk and one with the city auditor. Each bidder shall accompany his bid with a sworn statement in writing that the bidder has not directly or indirectly entered into any agreement, express or implied, with any other bidder or bidders, having for its object the controlling of the price or amount of such bid or bids, the limiting of the bids or bidders, the parceling or farming out to any bidder or bidders or other persons of any part of the contract or any part of the subject-matter of the bid or of the profits thereof. No bidder shall divulge the said sealed bid to any person whatever, except those having a partnership or other financial interest with him in said bid, until after the said sealed bids are opened. * * *

"Pending advertisement for bids, the plans, specifications, and profiles shall remain on file in the office of the city clerk, subject to the inspection of any person. For the safeguarding of the interests of the city, the board of commissioners shall make such regulations providing for the filing of the estimates of cost furnished them by the city engineer as they shall deem best."

Before any person could bid on the project, it was necessary for him to read the plans and specifications, and when he did read them, he learned that it was necessary for him to enter into a contract with the city to construct the bridge in event he was the successful bidder. In addition to this, he learned that this provision was in the plans and specifications:

"The word 'contract' shall mean collectively, all of the covenants, terms and stipulations contained in the various portions of this contract, to wit: advertisement, specifications, plans, instructions to bidders, bids, contract and bonds.

"The word 'advertisement' shall mean all of the legal publications pertaining to the work of this contract."

If he were not already familiar with the conditions in the advertisement or notice to bidders, he was advised by this provision of the plans and specifications that there was an advertisement and that the conditions therein were to be made a part of his contract in the event he was the successful bidder. If he had not already done so, on being advised that these conditions were to become a part of his contract, he would certainly then read them. Upon becoming familiar with the provisions of the advertisement, he knew that he would be required to sign a contract within seven days after his

bid was accepted; he knew that it was mandatory upon him to commence the work within 15 days after signing the contract. He knew that 200 working days was the maximum time within which to complete the work. He knew that the conditions mentioned in the advertisement would become a part of his bid and a part of his contract.

It is apparent that every bidder was required to bid upon the same identical thing as to material, labor, conditions, and time. In Iowa, the code required the notice to bidders to fix the time within which the work was to be done. In the case of Vowles v. Town of Kenwood (Iowa) 199 N. W. 1009, the notice failed to do this, but the specifications did. It was held that this was a suffiicent compliance with the statute, and in the fourth paragraph of the syllabus it was said:

"Notice to bidders for paving work, not stating 'when the work shall be done', as required by Code 1913, sec. 813, as amended, though defective, was cured by reference therein to plans and specifications containing form of proposal to be used by bidder, providing for completion of work by certain date, so that subsequent assessment based thereon was not void."

In the Iowa case the notice did not fix the time as required by the Code, but referred to the specifications, which provided for a definite time. In the case at bar the situation is reversed. The specifications fixed no time, but did make the advertisement a part of the contract and the advertisement fixed a definite time in which to complete the work. In this state there is no statute requiring a time limit to be placed either in the plans and specifications or in the advertisement to bidders. The law, however, requires competitive bidding, and this court in the case of Flynn Construction Co. v. Leininger, 125 Okla. 197, 257 Pac. 374, held that where the advertised notice for bids permitted each bidder to name a different time in which to complete the work, such proceeding did not constitute competitive bidding, and in the opinion Mr. Justice Harrison, speaking for the court, said:

"The only reason assigned for the refusal to pay the amount due is that the contract under which plaintiffs are proceeding is illegal and void, for the reason that the advertised notice for bids required, among other things, that each bidder name his own time in which he would complete the work; it being claimed by defendants that time is an essential element in competitive bidding and that by not requiring all bidders to specify the same time for completion of the work to be done, and by requiring each bidder to specify his own time, thus permitting each bidder to name a different time, the contract is illegal and void, for the reason that this manner of bidding does not constitute competitive bidding within the meaning of the statute."

The very thing that is complained of in the Flynn Case, and upon which the opinion was based, was done in the case at bar. The advertisement to bidders notified them of the exact time within which they would be required to complete the work and required them to bid upon the same project in every detail. No statute or charter provision requires the time limit to be inserted in the specifications. The necessity of a time limit is to insure competitive bidding and, for this purpose, whether it appears in the specifications or in the advertisement becomes immaterial. The important thing is that it must be done, and when it is done, the requirement of the law is met.

It is contended, however, that the time limit was inserted in the notice by the clerk without any authority. This is immaterial, because bidders are not expected to look for the authority of the clerk to insert the various provisions in the notice when such provisions do not conflict with the statute or charter of the city. They probably would have no right to question his authority.

In the case of Koch v. Inter-River Drainage District (Mo.) 257 S. W. 176, it was said:

"We only deem it necessary to discuss one question here, for, in our judgment, the disposition of that question settles the controversy. That question is whether the contract was valid when entered into. The trial court held that the provision in the contract allowing eight months in which to do the work, when the advertisement for the bids had stated that it would be required to be completed within four months, was a legal fraud, and invalidated the tax bills issued in payment for the work. In this we think the trial court was right. The ordinance having provided for notice to bidders, the city was thereby committed to the policy of awarding the contract to the lowest responsible bidder. The notice to bidders published in one paper fixed the time at four months. This was done by the clerk without authority, but it was a part of the notice, and bidders would not be expected to look for the authority of the clerk to insert such a provision in the notice, but would make their bids on the basis of the time fixed in the notice. It is apparent that the time within which the work was to be completed was a material and important matter to be considered by bidders in determining the cost of the work and would necessarily influence bidders in fixing the amount of their

bids. Spalding v. Forsee, 109 Mo. App. 675, 83 S. W. 540. * * *

"Appellant suggests that the ordinance which provided for advertising of bids had incorporated in it a blank form for use of bidders in making bids, and that form left the time in which the work was to be completed blank, and then insists that this meant that the bidder could fix the time by inserting it in his bid. We do not think this a sufficient notice to bidders that they could fix a time in their bid, especially when the published notice stated that the time would be four months."

In the Missouri case, the clerk, without any authority, fixed the time. In the case at bar the notice and conditions inserted therein were by the plans and specifications specifically made a part of the contract to be entered into by the successful bidder. The trial court committed no error when it held against the contentions of the plaintiff.

On a hearing of the application of the plaintiff in error for the temporary injunction the district court sustained a demurrer of the defendant in error to the evidence offered and introduced by the plaintiff in error and denied the temporary injunction. On application of plaintiff in error the restraining order was continued in force until and including July 31, 1928, on which date this court continued the restraining order in force during the pendency of this appeal. The order heretofore made continuing the restraining order during the pendency of the appeal is hereby vacated and the judgment of the trial court in sustaining the demurrer to the evidence of the plaintiff in error is hereby affirmed.

BRANSON. C. J., MASON, V. C. J., and PHELPS. LESTER, CLARK, and RILEY, JJ.. concur.

HUNT. J., concurs in conclusion.