FRANK C. BEST, APPELLEE, V. CITY OF OMAHA ET AL., APPEL-
LEES: YANT CONSTRUCTION COMPANY, APPELLANT.

293 N. W. 116

FILED JUNE 22, 1940.  NO. 30994.

*Munger & Rhodes,* for appellant.

*Gaines, McLaughlin & Shoemaker, Harold C. Linahan,
W. W. Wenstrand, Edward Sklenicka, L. J. Te Poel* and
*Alfred Raneri, contra.*

*King & Haggart, amici curiæ.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, MESSMORE and JOHNSEN, JJ.

SIMMONS, C. J.

This case presents two questions: Did the specifications for the construction of a sewage treatment plant fail to provide for competitive bidding so as to render void a contract based thereon? Was the contract let to the lowest responsible bidder?

In 1937 the city of Omaha was perpetually enjoined from depositing sewage in certain creeks in the city. By stipulation the decree was stayed until October 1, 1939, upon the condition that the city should construct a suitable disposal plant. A site was acquired and between 1937 and 1939 work was done on sewer construction with assistance furnished by the Works Progress Administration, an agency of the United States, hereinafter referred to as the W. P. A.

With the assistance of its engineers, legal staff, and specially employed sanitary engineers, the city prepared and completed in June, 1939, the plans and specifications for the proposed project and submitted the same for bids. All bids received upon the first proposal were rejected on November 8, 1939, because the city had failed to comply with certain statutory requirements. The plans and specifications were readvertised and bids were received and opened December 5, 1939. On January 2, 1940, the contract was awarded to the Yant Construction Company "with W. P. A. participation" and was executed by the parties on January 9, 1940. The necessary bond was furnished.

Subsequent to the preparation of the plans and specifications, the city, with W. P. A. assistance, began to do some of the work described in the proposals and continued to do so until the contract was executed. A small amount of excavation had been done when the first publication was ordered. A considerable part of the work on two items had been completed when the bids were opened December 5, 1939, and additional work had been done when the contract

was let. This resulted in the specifications calling for the contractor to bid on more work on a unit basis than he actually would be called upon to perform (the contractor being paid for only the unit work he performed). The amount of work which the city had completed at the date the bids were received was known to all bidders.

The city has secured an allotment for W. P. A. assistance on this project. It is conceded that this is not a binding obligation upon the federal government, that it may be withdrawn at any time, that, in any event, the commitment expires July 1, 1940, unless the project is underway, and that "with W. P. A. participation" a material saving can be made in the cost of this project to the city.

Plaintiff, as a taxpayer, seeks a decree declaring the contract void and enjoining its execution on grounds hereinafter set out and considered.

The trial court found that the plans and specifications did not afford an opportunity for competitive bidding, held the contract to be null and void, and enjoined the defendants from proceeding under it. The Yant Construction Company appeals.

The following facts enter into a decision of the questions presented: There is no evidence of bad faith, lack of good faith, of fraud, collusion, arbitrary or capricious action, violation of trust, or abuse of discretion on the part of the city officials or the construction company. There is no charge of collusion on the part of any or all of the bidders. All bidders had the same opportunity to bid, all knew all of the facts relating to the plans, specifications, and conditions of the work. No bidder asked for a clarification or interpretation of the plans and specifications. All submitted bids on the alternative proposals, and the conditions and provisions were applied alike to all bidders. The city was required to expedite the completion of this project by (1) the injunctive order which had become final; (2) its obligation to remove a public nuisance and protect the health and property of its citizens; (3) its desire to have W. P. A. participation both as a matter of saving cost to its taxpayers and furnishing

employment to its unemployed. It was to the advantage of the city and its citizens that the W. P. A. work being done prior to the execution of the contract should continue without hinderance or interruption.

The following general principles control the questions presented.

(1) Public administrative bodies possess a discretionary power in awarding contracts, in considering the responsibility of bidders, and in determining questions of public advantage and welfare.

(2) Where there is a showing that the administrative body, in exercising its judgment, acts from honest convictions, based upon facts, and as it believes for the best interests of its municipality, and where there is no showing that the body acts arbitrarily, or from favoritism, ill will, fraud, collusion, or other such motives, it is not the province of a court to interfere and substitute its judgment for that of the administrative body. *State v. Board of Commissioners*, 105 Neb. 570, 181 N. W. 530.

(3) It is presumed that a public administrative body acts in good faith, with honest motives, and for the purpose of promoting the public good and protecting the public interest.

(4) It is not the policy of the law to prevent a public administrative body from properly exercising its discretion in administering the affairs committed to its charge for the best interests of the municipality that it represents.

(5) In the absence of controlling legislative or judicial direction, when acting within the limits of the general powers which it possesses, a public administrative body has the power to determine questions of public policy that concern primarily its municipality.

That the city has express statutory authority to construct the proposed works subject to the requirement that the contract must be awarded to the "lowest responsible bidder" is conceded. Comp. St. Supp. 1939, sec. 18-1407.

The object of the statute is "to invite competition and prevent favoritism and fraud. * * * To attain that object

it is essential that the bidders, so far as possible, be put on terms of perfect equality, and that they be permitted to bid on substantially the same proposition, and on the same terms." *Fairbanks, Morse & Co. v. City of North Bend,* 68 Neb. 560, 94 N. W. 537.

Plaintiff contends that the specifications followed prevent the realization of the above object and are contrary to law. The objections will be considered in the order stated in the petition.

(First) Because each bidder was required to fix his own time for the completion of the work, the specifications did not permit uniform bids. This proposition was discussed pro and contra but not decided in *Root v. Douglas County,* 105 Neb. 262, 180 N. W. 46. The courts of other jurisdictions are not in accord on the question. Plaintiff cites the following cases: *Armitage v. Newark,* 86 N. J. Law, 5, 90 Atl. 1035; *Jordan v. Borough of Dumont,* 7 N. J. Misc. 476, 146 Atl. 49; *Deutsch v. Oklahoma City,* 133 Okla. 51, 270 Pac. 851. Defendants cite: *Phifer v. City of Bayonne,* 105 N. J. Law, 524, 146 Atl. 463; *Hirsch v. City of Vicksburg,* 141 Miss. 827, 105 So. 492; *Robinson v. City of Saginaw,* 267 Mich. 557, 255 N. W. 396. The city council, being charged with the determination of what is for the best interests of the city, when so acting, should not be restricted by arbitrary rules that might require it to act against what an honest judgment, based upon the situation then being considered, dictates as the best course to follow. In the absence of specific statutory direction, a sound public policy requires that the city council be permitted to determine in the proposals whether or not the work must be completed within a specified time or left open to the bidder to propose a time of completion. To so hold is in keeping with the policy of this state which permits cities to adopt home-rule charters. In the instant case, time is an important element, both because of the injunctive order and because of W. P. A. assistance. It might be that a contractor would propose to do the work more quickly than the city had specified in its proposals. The city should not be prevented from taking ad-

vantage of such a saving of time if the council deem it best to do so. The city council may, therefore, determine which course is for the best interest of its municipality, and, if it so desires, permit bids to be proposed in which the bidder fixes the time for completion. This permits the city council to consider the time of completion in conjunction with and as a part of the other elements that enter into the determination of who is the lowest responsible bidder.

(Second) The plans and specifications are speculative in that each bidder was required to submit two bids, in the alternative, one "with" and one "without" W. P. A. participation. Plaintiff does not contend that alternative bids destroy competitive bidding. Neither is this objection directed at W. P. A. participation. The objection is predicated on the proposition that the plans and specifications provide that "the lowest bid will be determined upon the basis of aggregate cost" with W. P. A. participation; provided, however, that if at any time prior to the time the contract is awarded, it shall be definitely determined that the W. P. A. will not participate in this contract, then, and in that event, the lowest bid will be determined upon the basis of aggregate cost "without W. P. A. participation;" and that by bidding low on the contract "with W. P. A. participation" and high on the contract "without W. P. A. participation," a successful bidder might thereby secure the contract on a higher bid than others. It might also be that, if W. P. A. participation was withdrawn pending performance, the successful bidder based on W. P. A. participation would receive more under that part of the contract completed "without W. P. A. participation." All bidders have the same opportunity to bid on the same proposals. Under the proposals, the determining factor as to which bid is to control depends upon the status of W. P. A. participation at the time the contract is awarded. The objection goes not to the competitive nature of the plans and specifications, but to the question of which bidder is the "lowest responsible bidder." That matter will be hereinafter considered.

(Third) The specifications were speculative in that the

city reserved the right to omit from the contract any or all of several items, aggregating in amount about one-third of the contract, that this provision permitted the city to select a preferred bidder, and in that a bidder did not know what items would finally be included in the contract. This objection is based on the proposition that the city reserved the right to omit the items *after the bids were opened and before the awarding of the contract,* and that in any event the proposal permits of possible favoritism. It does not appear that any items were actually withdrawn before the contract was awarded. Proposals in this form were approved by this court in *State v. Board of Commissioners, supra,* where items were eliminated after the bids were opened and before the contract was awarded. It is common knowledge that such provisions are in many, if not all, contracts for construction of works of any size. It is obvious that it has a legitimate purpose, and that is to enable the administrative body to eliminate, if need be, unnecessary and auxiliary items, and thereby reduce the expense of the construction after the cost of the total project is disclosed. It is obvious that these matters could not be determined before the bids are opened, and likewise obvious that they should be determined before the contract is awarded. In the items reserved for possible omission are slag or gravel walks, roadways, loam, sodding, seeding, and fencing. Certainly it is sound administrative policy for the city to reserve the right to omit such items if for reasons of expense or proper construction, etc., it is determined best to do so. Sinister and illegal motives or intentions will not be imputed to the city officials for so doing. Should a case arise where it is demonstrated that such a provision is used for illegal and improper purposes, the situation can then be met. It is not shown to exist here. Any other rule would require the city to ask for separate proposals and enter into separate contracts on all of such items. Sound public policy does not require that the city follow such a course.

Plaintiff further alleged that the contract was not let to the lowest responsible bidder for the following reasons:

(1) The Yant Construction Company, on the items which the city was performing, submitted unit bids below cost, knowing that it would not be called upon to perform those items fully, and thereby reduced its total bid lower than it actually would have been had it bid proper amounts on those items, and that, because thereof, it was not the lowest bidder on items which it actually had to perform; that its bid was unbalanced and therefore illegal; and (2) the Yant Construction Company was the highest bidder as to performance "without W. P. A. participation," and that the bids were necessarily speculative because there was no certainty of the extent, if at all, of W. P. A. participation.

These objections go to the question of who is the "lowest responsible bidder," not to the legal sufficiency of the specifications. That decision is for the administrative body in the proper exercise of its discretion and judgment.

The legislature did not in the statute define "lowest responsible bidder" nor establish any other yardstick by which the city authorities were to be guided in their deliberations and conclusions. This court, however, in 1921, considering the question of what constituted "the lowest responsible bidder," stated:

"The term 'responsible' as used in the statute is not limited in its meaning to mere financial responsibility, but includes within its purview the general ability and capacity of the bidder to perform the work, his facilities and suitability for the task, and those qualities which he must necessarily have in order that he be able to perform the contract strictly in accordance with its terms." *State v. Board of Commissioners, supra.*

The legislature, having adopted the language, is presumed to have used it as defined by this court prior to the passage of section 18-1407, Comp. St. Supp. 1939.

There were four bids. It appears to be conceded in the briefs that one bid was invalid because the bidder did not propose a completion date for the work. Likewise, there is uncontradicted evidence that a second bidder proposed material on one item that was below the standard fixed by the

specifications. These objections to the two bids may be here disregarded for the record (both petition and evidence) is absolutely silent on the question of who, other than the Yant Construction Company, is the lowest responsible bidder, save and except the one element of the amount of the bid. That, however, as this court has held (*State v. Board of Commissioners, supra*) is not the sole element that must be considered. Accordingly, there is nothing in the record upon which a judicial review of the action of the city council in that regard can be based. Not only is that true, but the record contains the affirmative finding of the city council that the Yant Construction Company is the lowest responsible bidder and recites the basis of that finding. It necessarily follows that, so far as this record reveals, the Yant Construction Company was the lowest responsible bidder.

At the close of the case, the defendants moved that the petition and action be dismissed for the reason that there was neither pleading nor proof to sustain a decree in favor of plaintiff. The motion should have been sustained. The decree of the trial court is reversed and the cause dismissed.

REVERSED AND DISMISSED.